Argued 17 October, decided 27 November, 1905.

## LIVESLEY *v*. LITCHFIELD.

83 Pac. 142.

ELECTIONS — CONSTITUTIONAL RIGHT TO VOTE — RESTRICTIONS.

1. Every person possessing the qualifications of an elector as prescribed by the constitution of the State in which he lives is entitled to vote at all elections provided by such constitution and by laws authorized thereby, and the legislature cannot change such qualifications in any degree unless authority so to do is conferred by the constitution.

For instance: The qualifications for voting in Oregon defined by Const. Or. Art. II, § 2, apply to voters at all elections in this State, unless some exceptions can be justified by the constitution itself or by some legislative act not thereby prohibited.

CONSTITUTION — MUNICIPAL RESTRICTION ON RIGHT TO VOTE.

2. Section 2 of Article XI of Constitution of Oregon, authorizing the formation of municipal corporations by special laws, which may be altered, amended or repealed, and Section 7 of Article VI, authorizing the election of city officers "in such manner as may be prescribed by law," do not confer on the legislature power to prescribe the qualifications of voters at municipal elections, the word "manner" in said Section 7 meaning the mode or particular way of conducting the election.

SALEM CHARTER — RESTRICTION ON RIGHT TO VOTE.

3. The provision of Salem charter (Sp. Laws 1903, pp. 337, 351, § 15), prohibiting any person from voting at any election of said city who has not paid a road poll tax for the year in which he offers to vote, unless exempt as otherwise in said charter provided, is void as in conflict with Const. Or. Art. II, § 2, prescribing the qualifications of electors at all elections not otherwise provided for by said constitution.

From Marion : GEORGE H. BURNETT, Judge.

Statement by MR. JUSTICE BEAN.

This is an action for damages by Charles S. Livesley against G. P. Litchfield and David Steiner. The object of the proceeding is to test the constitutionality of the provision in the charter of the City of Salem prohibiting any person from voting at a city election "who has not paid, unless he be exempt therefrom, a road poll tax for the year in which he offers to vote": Sp. Laws 1903, 351. The plaintiff, who resided in the city and possessed all the qualifications of a voter therein, except he had not paid a poll tax, tendered his vote at a regular election for city officers, held on December 5, 1904, but a majority of the judges of election refused to receive his ballot or permit him to vote, and he thereupon brought this action against them to recover damages. It resulting adversely to him, he appeals.    REVERSED.

For appellant there was a brief with oral arguments by *Mr. S. T. Richardson* and *Mr. W. E. Richardson.*

For respondents there was a brief and an oral argument by *Mr. Henry Johnson Bigger.*

MR. JUSTICE BEAN delivered the opinion of the court.

1. The general rule is that the electorate of a state or any of its governmental subdivisions is created and defined by the fundamental law, and that the source of all authority to vote at any popular election is the state constitution. Any citizen possessing the qualifications of an elector as defined by that instrument, and who is not disqualified by any of its provisions, is entitled to the right of suffrage,

and it is not within the power of the legislature to deny, abridge, extend or change the qualifications so prescribed: Cooley, Const. Lim. (7 ed.), 899; 10 Am. & Eng. Enc. Law (2 ed.), 576. Section 2 of Article II of the constitution of this State reads:

"In all elections not otherwise provided for by this constitution, every white male citizen of the United States, of the age of twenty-one years and upwards, who shall have resided in the State during the six months immediately preceding such election, and every white male of foreign birth of the age of twenty-one years and upwards, who shall have resided in this State during the six months immediately preceding such election, and shall have declared his intention to become a citizen of the United States one year preceding such election, conformably to the laws of the United States on the subject of naturalization, shall be entitled to vote at all elections authorized by law."

This provision is by its terms expressly made applicable to all elections not otherwise provided by the constitution. To empower the legislature, therefore, to add to or abridge the qualifications of a voter as thus defined, some other provision of the constitution must be pointed out which confers such authority in express terms, or by necessary implication.

2. The only provisions bearing on the question now under consideration to which our attention has been called are Section 2, Article XI, and Sections 6 and 7 of Article VI, which are as follows:

"Corporations may be formed under general laws, but shall not be created by special laws, except for municipal purposes. All laws passed pursuant to this section may be altered, amended, or repealed, but not so as to impair or destroy any vested corporate rights": Const. Or. Art. XI, § 2.

"There shall be elected in each county, by the qualified electors thereof, at the time of holding general elections, a county clerk, treasurer, sheriff, coroner, and surveyor,

who shall severally hold their offices for the term of two years": Const. Or. Art. VI, § 6.

"Such other county, township, precinct, and city officers as may be necessary shall be elected or appointed in such manner as may be prescribed by law": Const. Or. Art. VI, § 7.

In support of the judgment of the court below it is contended that the sections just quoted vest in the legislature plenary power to create corporations for municipal purposes, and to prescribe and define the qualifications of voters at elections to be held therein, and *Harris* v. *Burr*, 32 Or. 348 (52 Pac. 17, 39 L. R. A. 768); *Buckner* v. *Gordon*, 81 Ky. 665; *McMahon* v. *Savannah*, 66 Ga. 217 (42 Am. Rep. 65); *Town of Valverde* v. *Shattuck*, 19 Colo. 104 (34 Pac. 947, 41 Am. St. Rep. 208); *Hanna* v. *Young*, 84 Md. 179 (35 Atl. 674, 34 L. R. A. 55, 57 Am. St. Rep. 396); and *State* v. *Dillon*, 32 Fla. 545 (14 South. 383, 22 L. R. A. 124), are cited in support of this position. *Harris* v. *Burr*, 32 Or. 348 (39 L. R. A. 768, 52 Pac. 17), involved the validity of an act of the legislature conferring upon women the right to vote at school district elections, and the court, after reviewing at length the legislation in respect to the qualifications of voters at school elections prior to, at the time, and since the adoption of the constitution, concluded that in view of such legislation and of the fact that the constitution does not name or mention school officers or school elections, but in express terms relegates to the legislature the duty of establishing "an uniform and general system of common schools" (Const. Or. Art. VIII, § 3), it was competent for it to prescribe the qualifications of a voter at a school district meeting. "The power ascribed to the legislature under the constitution," says Mr. Justice WOLVERTON, "to provide for the establishment of a uniform and the general system of common schools, carries with it plenary power to establish the unit of that system,

denominated a school district, to determine what officers shall administer its affairs, who and what manner of persons shall be eligible to office, and how and by whom they should be chosen. The elective franchise conferred by Section 2 of Article II does not, nor was intended to, fix and define the qualification of voters at school meetings, but was designed only to govern in all general and special elections not otherwise provided for by the constitution, and applies to the election of all officers known to the constitution, as well as to such as may be provided for thereunder, aside from those provided for under the special power of the legislature to establish a uniform and general system of common schools." It will thus be seen that this case proceeds wholly on the theory that the constitution has in express terms authorized and empowered the legislature to establish a system of common schools, and that it intended [to] and did confer upon that body the power to declare the qualifications of voters for district officers. Such elections are therefore "otherwise provided" by the constitution, and expressly exempted from the operation of Section 2, Article II. But no such provision is to be found in the constitution as it respects municipal corporations.

The legislature has power to create such corporations by special laws, and "to prescribe by law" the "manner" of the election or appointment of the officers thereof. The power thus conferred is not like that to establish and organize school districts, but more nearly resembles that granted for the organization of counties. A municipal corporation is but a governmental agency or local organization for governmental purposes. Its officers are none the less governmental officers because elected or chosen by the people of a particular locality. It is difficult, if not impossible, to conceive that, when Section 7 of Article VI declares that the officers of a city may be elected or ap-

pointed as prescribed by law, it did not contemplate that the election, if held, should be by the qualified electorate of the municipality, for, as said by Mr. Justice CHRIS-TIANCY, in *People* v. *Hurlburt*, 24 Mich. 44 (9 Am. Rep. 103): "It may be said with certainty that, wherever in the constitution the election of an officer is provided for, it means an election by the electors of the State, if it be a state office, or of the district or political subdivision for which he is to be elected, unless the constitution itself, as to any particular election, provides otherwise."

The authority given by Section 7 of Article VI to prescribe "the time and manner" in which municipal officers may be elected or appointed does not, we think, include the power to determine what shall constitute a legal voter. The Constitution of Michigan declares that the legislature shall "provide for the incorporation and organization of cities and villages," and that "judicial officers of cities and villages shall be elected and all other officers shall be elected or appointed at such time and in such manner as the legislature may direct." The legislature passed an act conferring upon women the right to vote in all village and city elections, but it was held invalid because in violation of the section of the constitution prescribing who shall be electors and entitled to vote in all elections. The court said: "The authority to direct the time and manner in which judicial officers shall be elected, and the other officers elected or appointed, does not involve the power to determine who shall constitute the electorate. The word 'manner,' it is true, is one of large signification, but it is clear that it cannot exceed the subject to which it belongs. It relates to the word 'elected.' The constitution had already provided for electors, and when it provides that an officer shall be elected it certainly contemplates an election by the electorate which it has constituted. No other election is known to the constitution, and, when it

provides that the legislature may direct the manner in which an officer shall be elected, it simply empowers the legislature to provide the details for the holding of such election. The machinery of government differs in its details in cities, villages, and townships, and there must necessarily be differences in methods and officers to administer the election laws": *Coffin* v. *Election Com'rs*, 97 Mich. 188, 194 (56 N. W. 567, 568, 21 L. R. A. 662).

The same construction was given to the word "manner" in a like constitutional provision by the Supreme Court of Illinois, in *People ex.rel.* v. *English*, 139 Ill. 622 (29 N. E. 678, 15 L. R. A. 131). In that case the relator, a female, claimed the right to vote for county school superintendent. The constitution printed that "there may be a county superintendent of schools in each county, whose qualifications, duties and compensation and the time and manner of his election and term of office shall be prescribed by law." The court held the law conferring the right upon women to vote for such officer unconstitutional, saying: "The constitution having thus made provision for such officer, and for his and her 'election,' and having prescribed, in section 1 of article 7 (Ill. Const.), the qualifications essential to entitle a person to vote at 'any election,' it must be presumed that it was and is the true intent and meaning of that instrument that no person shall have the right to vote for a county superintendent of schools who does not possess such qualifications. * * Said section 5 (art. 8) provides, not only that the qualifications, powers, duties, compensation and term of office of the county superintendent of schools shall be prescribed by law, but also that the 'time and manner of election' of such superintendent 'shall be prescribed by law.' What is meant by the expression 'manner of election?' Was it intended thereby to give to the legislature the power of prescribing the qualifications which would entitle persons to vote at any

election for such county superintendent? The word 'manner' is usually defined as meaning way of performing or executing, method, custom, habitual practice, etc. * * [It] indicates merely that the legislature may provide by law the usual, ordinary, or necessary details required for the holding of the election."

The Michigan and Illinois cases referred to are much to the purpose in the present discussion, because the courts of each of these States have held that under a constitution like ours, imposing on the legislature the duty of providing for and establishing a common school system, it is competent to confer the right to vote at school elections upon women, and these cases were relied upon as supplying the conclusion reached in *Harris* v. *Burr*, 32 Or. 348 (39 L. R. A. 768, 52 Pac. 17); *Plummer* v. *Yost*, 144 Ill. 68 (33 N. E. 191, 19 L. R. A. 110); *Belles* v. *Burr*, 76 Mich. 1 (43 N. W. 24). The cases cited from these States illustrate and point out the distinction between the right to vote at school district meetings and at an election for city and municipal officers.

The Kentucky, Maryland, Georgia, Colorado, and Florida cases all involved the right to vote at municipal elections, but the decisions were made under constitutions essentially different from ours. The Constitution of Kentucky provided that "every free white male citizen," etc., "shall be a voter" (3d Const. Ky. art. 2, § 8), without undertaking to designate at what election or for what officer the vote might be cast, and the court held, considering this section in connection with other provisions of the constitution, that it was intended to apply only in the election of constitutional officers, as distinguished from those created by legislative act. Our constitution, however, prescribes the qualifications of voters "in all elections not otherwise provided by this constitution," and "at all elections prescribed by law," so that, in place of being appli-

cable to constitutional officers only, it is expressly made applicable to all elections authorized by law, unless the constitution itself otherwise provides. The power to take from or add to the qualifications of a voter, as prescribed in Section 2 of Article II, at any election, must be found in that instrument. The qualification of a voter as thus defined is intended to apply to the election of all officers, whether provided by the constitution or by a law author- ized thereby, unless authority for the exemption can be found in the instrument itself.

The Constitution of Maryland named and defined the qualifications of voters in the state at large and in the City of Baltimore, and in general terms authorized the creation of other corporations for municipal purposes, thus leaving to the legislature, so the court held, the power to add to the qualifications of voters residing within the corporate limits of a town so created any reasonable restriction it might deem proper. The Constitution of Georgia, after defining the qualification of voters, empowered the legislature to prescribe from time to time for the registration of all voters. It was held that a law requiring the payment of a certain sum in lieu of poll tax as a condition to the right of registration for a city election was not adding to the qualification of voters, but was a mere statutory requirement, designed "to secure the discharge of the duties citizens owed the municipal government and to protect the purity of the ballot." The Colorado constitution defined the qualification of voters "at all elections," and the court held that it applied only to elections of "public officers," and not to a law for the dissolution and annexation of contiguous cities and towns. The Florida constitution defined the qualification of electors at all elections "under this constitution," and it was held that it did not apply to municipal elections because they were not held under the constitution. None of the cases are, therefore,

in point or authority under our constitution, which has specially prescribed the qualification of voters at all elections not otherwise provided in that instrument itself.

3. Without pursuing the discussion further, we are all agreed that the provision of the Salem charter in question is void, and this conclusion finds support in *St. Joseph, etc., Ry. Co.* v. *Buchanan County Court*, 39 Mo. 486; *Allison* v. *Blake*, 57 N. J. Law, 6 (29 Atl. 417, 25 L. R. A. 480); and *People* v. *Van Bokkelen*, 73 N. C. 198 (21 Am. Rep. 465), in addition to the authorities already referred to.

The judgment of the court below will be reversed, and the cause remanded.                    REVERSED.