Argued at Pendleton, May 6; reversed October 1; rehearing denied November 5, 1929

CARL A. JOHNSON et al. *v.* CITY OF PENDLETON et al.

(280 Pac. 873)

For appellants there was a brief over the names of *Messrs. Watts & Prestbye, Mr. J. H. Raley* and *Mr. Will M. Peterson* with oral arguments by *Mr. Homer I. Watts* and *Mr. J. H. Raley.*

For respondents there was a brief and oral argument by *Mr. C. Z. Randall,* City Attorney.

RAND, J. Plaintiffs, as citizens and taxpayers of the city of Pendleton, brought this suit to restrain the city, its mayor and councilmen, from executing or carrying into effect certain powers purporting to have been conferred upon the city by an amendment of the city charter and by certain ordinances, which had been submitted to and adopted by the legal voters of the city at an election called for that purpose. The purpose of the amendment and of said ordinances was to authorize the city to accept and comply with the requirements of a written proposal made by one of its citizens to construct at his expense on a site to be furnished by the city and to donate to it a memorial building for the use of its citizens as a community building and museum.

The cause was heard below on a demurrer to the second amended complaint and resulted in a decree sustaining the demurrer and dismissing the suit.

It appears from the amended complaint that on March 1, 1928, John Vert, a citizen of Pendleton, made a written proposal to the common council of that city in which he agreed to construct, according to plans which he had had already prepared, a memorial building to be known as "The Vert Memorial Community Building and Museum" at a cost of approximately $65,000 and to donate such building to the people of

the city of Pendleton upon condition that certain requirements, which he set forth in his written proposal, should be first met and complied with by the city. These requirements were that the city should provide a suitable site satisfactory to him; that the electorate of the city should agree by ballot to provide annually sufficient funds to maintain and operate the building, grounds and museum; that the form of ballot to be submitted to the voters and the matter to be printed thereon should conform to the views of his attorney; that he was to retain control and attend to the purchasing and construction contracts and convey the structure, when completed, free of all incumbranches, to the city of Pendleton; "that a self-perpetuating board of trustees shall be created to assume the management, care and administration of the building, auditorium and museum, including its community features and grounds, when turned over by me to the city in completed form"; that the said board of trustees shall consist of the mayor, the president of the Pendleton Commercial Association, the chairman of the finance committee of the common council, the presidents of three woman's clubs, and of the donor during his lifetime; that the board shall be self-perpetuating in that each of the officials named shall be succeeded by his successor in office when elected and that upon donor's death the vacancy caused by his death shall be filled by the remaining trustees by appointment of some citizen of Pendleton interested in public affairs; that should any of said woman's clubs go out of existence the vacancy caused thereby shall be filled by appointment of a representative by the trustees either of some other woman's club or of some other suitable citizen of Pendleton; that his proposal should be submitted to the people for their

approval, with an ordinance to be adopted by the people requiring the city council to levy an annual tax upon the taxable property in the city of Pendleton sufficient to raise the sum of $5,500 for use by the trustees in the maintenance, operation and upkeep of the building and grounds; that any surplus resulting from the levying of such tax shall be invested in securities to be approved by the mayor and the chairman of its finance committee, the proceeds of which shall be used only for the purchase of additional articles or fixtures for the museum, the enlargement of the building or the purchase of additional space, and to require the custodian of the property and also the treasurer of the funds to furnish bonds satisfactory to the trustees.

The complaint also alleges that in order for the city to accept the proposal and obligate itself to comply with its conditions it was deemed necessary by the common council that the charter of the city be amended and that an ordinance proposing said amendment and authorizing and directing the council to comply with the terms of the proposal should be submitted to the legal voters of the city for their adoption or rejection; that an ordinance proposing such amendment and accepting said proposal and providing for the creation of a self-perpetuating board of trustees to consist of the persons named in the proposal, the membership thereof to be perpetuated as provided in the proposal and also authorizing and requiring the common council to levy on all taxable property of the city of Pendleton an annual tax sufficient to produce the sum of $5,500 each year and providing that in the event any surplus should remain on hand at the end of any year, after the payment of the expenses during that year, such surplus should be invested in securities

to be approved by the mayor and chairman of the finance committee and that the funds so invested shall be devoted only to the purchase of additional articles or fixtures for the museum or for the enlargement of the building itself, was submitted and adopted by the people; that as so submitted the ordinance authorized and empowered the city of Pendleton to issue and sell bonds in an amount not exceeding the sum of $7,500, the proceeds of which were to be used for procuring a site for the proposed building, the bonds to be designated as "Community Hall Bonds," and the amount thereof to be in addition to the indebtedness theretofore authorized; that the ordinance also provided that said annual tax shall be "in addition to all other taxes authorized by the charter of the city of Pendleton and to be exempt from, and not included within, any limitation upon the taxing power of the council of the city of Pendleton"; that said measure was not submitted to the taxpayers of the city only but was submitted to the legal voters of the city and adopted by a majority of the votes cast at the election.

It is also alleged that in 1876, and prior to the incorporation of the city of Pendleton, Aura M. Raley and H. J. Raley conveyed to three named trustees in trust a certain tract of land containing approximately three acres, which is now within the limits of the city, for cemetery purposes; that said trustees accepted such trust, took possession of said property for the uses and purposes of a public cemetery and that said tract of land ever since said time has been and is now being used as a public cemetery and several hundred bodies are now buried therein; that since the acceptance of said proposal and the adoption of said charter amendment and ordinances, Vert, with the council of the city, has selected a portion of said cemetery as the

site upon which said memorial building is to be constructed, and that prior to said acceptance of said proposal and under a similar proposal made by Vert to the city, an ordinance was passed to prevent the burial of any other bodies in said cemetery and requiring all bodies now buried in that portion so selected to be removed and buried elsewhere at the expense of the city.

It is also alleged that the charter amendment and ordinances are invalid because adopted by the legal voters of the city instead of by the taxpayers, as provided by section 8 of article II of the city charter, that they are also invalid because requiring the city to levy perpetually an annual tax upon the taxable property of the city sufficient to raise in addition to its other taxes the sum of $5,500 per annum for the maintenance and operation of said building; that the city is threatening to carry out and comply with the conditions imposed in the written proposal; that these conditions are illegal and beyond the powers of the city; that their performance will at all times subject the property of the plaintiffs to the payment of illegal taxes; that the site for the building selected pursuant thereto, which the city threatens to acquire and use for that purpose, is already devoted to a public use and cannot be subjected to any further or additional public use; that it is not within the power of the city to obligate itself to levy a specific tax for the purposes proposed or to bind the legislative department of the city to levy an annual tax for all time or for an indefinite time.

■ Section 8 of article II of the charter of the city of Pendleton prescribes the qualifications of persons entitled to vote upon matters relating to taxation within the city and expressly limits such voters to taxpayers only. Plaintiffs contend that this require-

ment of the charter is in full force and effect and that since it was not complied with the election was invalid. They base their contention upon the decisions of this court in the cases of *Board of Directors v. Peterson,* 64 Or. 46 (128 P. 837, 129 P. 123); *Oregon-Wisconsin Timber Co. v. Coos County,* 71 Or. 462 (142 P. 575); *Beirl v. Columbia County,* 73 Or. 107 (144 P. 457); *Pearce v. Roseburg,* 77 Or. 195 (150 P. 855), which hold that article II, section 2 of the state constitution, defining the qualifications of electors, is applicable to elections where public officers are to be elected and not to elections which were unknown at the time of the adoption of the constitution, such as the election involved here. If section 2 of article II contained the only reference in the constitution to the qualifications of voters in city elections then the provisions of the charter of the city of Pendleton would be controlling upon the qualifications of the voters at such an election but section 2 of article XI provides that the "legal voters of every city or town are hereby granted power to enact and amend their municipal charter, subject to the constitution and criminal laws of the state of Oregon," etc., and section 1a of article IV provides that "the initiative and referendum powers reserved to the people by this constitution are hereby further reserved to the legal voters of every municipality and district, as to all local, special and municipal legislation of every character, in or for their respective municipalities and districts." The effect of these constitutional provisions is to render nugatory the restrictions and limitations contained in the Pendleton charter and hence the matters were properly submitted to the legal voters and not to the taxpayers only, as contended for. See *State ex rel. v. Port of Astoria,* 79 Or. 1 (154 P. 399).

■ Plaintiffs' second contention is that the enactment of the ordinance amending the charter and authorizing the acceptance of Vert's proposal is ultra vires and void for the reason that it is an attempt to bind the city to annually levy a tax of $5,500 upon the taxable property of the city for the specific purpose of operating and maintaining a memorial building for all time to come. The city attempts to meet this contention by contending that this ordinance may be amended or repealed at any time in the future, either by the city council or by the people. On its face the ordinance purports to accept Vert's written offer without any qualifications whatsoever. His written proposal expressly states that the ordinance to be submitted to the people shall provide "for the levying annually of a tax of fifty-five hundred dollars upon the taxable property in the city of Pendleton to provide funds for maintenance, operation, upkeep, enlargement, etc.," and said ordinance accepting said proposal as enacted expressly provides that the city shall levy an annual tax sufficient to produce that sum to be used for the purpose proposed, and then provides "said tax to be in addition to all other taxes authorized by the charter of the city of Pendleton and to be exempt from and not included within any limitation upon the taxing power of the council of the city of Pendleton."

On their face and in plain terms the proposal and the ordinance accepting it each shows an intention, upon the part of both Vert and the city, that the city shall annually raise by taxation and each year appropriate $5,500 for the purposes named in the proposal, which appropriations are to continue not for a definite period of time but for all time, the amounts so appropriated to be expended not by the city or its

officers but by a board of trustees designated by Vert over whom the city is to have no control. The written proposal and its unqualified acceptance by the city contain all of the elements of a contract and if followed by the construction and conveyance of the building to the city would, if the city has power to enter into such a contract, constitute a valid and enforceable contract between the parties which, like all other contracts, could not be abrogated by one of the parties to it without the consent of the other. Hence, upon performance by Vert, if the contract is valid, the city would be powerless to abrogate its contract or to avoid its obligation to perform, either by repealing the ordinance or amending it. When thus executed, the contract would be within the protection of the constitutional provision against laws impairing the obligation of contracts. We have, therefore, an attempt upon the part of the city, by vote of the people, to enter into a contract binding the city for all time to come to make an annual levy and appropriation of $5,500 for a specific purpose and a contention upon the part of the city that it has power to enter into such a contract. We think that the city of Pendleton possesses no such power. As said by Sanborn, C. J., in *Omaha Water Co. v. Omaha,* 77 C. C. A. 267 (147 Fed. 1, 12 L. R. A. (N. S.) 736, 8 Ann. Cas. 614):

"A city has two classes of powers, the one legislative or governmental, by virtue of which it controls its people as their sovereign, the other proprietary or business, by means of which it acts and contracts for the private advantage of the inhabitants of the city and of the city itself. In the exercise of powers which are strictly governmental or legislative, the officers of a city are trustees for the public, and they may make no grant or contract which will bind the municipality beyond the terms of their offices because they

may not lawfully circumscribe the legislative powers of their successors. But, in the exercise of the business powers of a city, the municipality and its officers are controlled by no such rule and they may lawfully exercise these powers in the same way, and, in their exercise, the city will be governed by the same rules, which control a private individual or a business corporation under like circumstances. In contracting for the construction or purchase of waterworks to supply itself and its inhabitants with water, a city is not exercising its governmental or legislative, but is using its business or proprietary, powers. The purpose of such a contract is not to govern its inhabitants, but to obtain a private benefit for the city and for its denizens: *Illinois Trust & Sav. Bank v. Arkansas City,* 34 L. R. A. 518, 22 C. C. A. 171, 182, 40 U. S. App. 257, 76 Fed. 271, 292, and cases there cited.''

To the same effect, see *McCormick v. Hanover Tp.,* 246 Pa. 169 (92 Atl. 195); *Born v. Pittsburgh,* 266 Pa. 128 (109 Atl. 614); *Town of Temple v. Corbell,* 17 Ariz. (147 P. 745, L. R. A. 1915E, 581). See also *Robbins v. Hoover,* 50 Colo. 610 (115 P. 526).

■ The power to levy taxes has always been regarded as an incident of sovereignty and one which belongs exclusively to the legislative department: 1 Cooley on Taxation (3 ed.), p. 7. In exercising the taxing power the legislative department of the state or of a city or town is exercising a purely governmental function. In the exercise of a governmental power, no legislature has power to enact an irrepealable law. Upon matters which are purely governmental in their nature, such as the levying of future taxes, no legislative act will bind a subsequent legislature, but when a legislative act assumes the form and substance of a contract, as was attempted in the instant case, if the contract was valid, the legislation would be irrepealable and would bind all subsequent

legislative bodies of the city of Pendleton. There is no other mode except by contract by which a legislative act can be made binding upon subsequent legislatures. It is very clear that the city of Pendleton could not enter into a contract which would bind its people or its legislative department in the future to levy a tax for any purpose or for any amount. Such attempted action upon its part would come within the principle denounced by Blackstone when he said: "Acts of parliament derogatory from the power of subsequent parliaments, bind not": 1 Bl. Com. 90. The power to levy a tax or to determine whether a tax shall be levied or not is a power which must be preserved and exercised whenever the public good demands or may demand its exercise. As to such powers no legislative body can bind its successors in office. See Cooley, Const. Lim. (7 ed.), p. 174.

The contract attempted to be entered into by the city in the instant case was not within the power of the city because its performance by the city would require it to levy an annual tax in a specific amount for a specific purpose for all time to come. No legislative body has power to bind its successors to levy any particular tax in the future or to determine what amount shall then be levied. That is purely a governmental matter which must be determined by those upon whom, at that time, the duty will devolve. There can be no difference in the rule whether such taxes are directed to be levied by popular vote or by act of the legislature itself.

This renders unnecessary the consideration of the other grounds upon which plaintiffs base their right to injunctive relief, and hence they will not be considered. Upon the grounds stated and for the reasons

stated plaintiffs were entitled to an injunction, and it was error for the court to sustain the demurrer to plaintiffs' bill of complaint.

The decree will, therefore, be reversed and the cause will be remanded with directions to overrule the demurrer and for such other and further proceedings as are not inconsistent herewith.

McBRIDE, BEAN and ROSSMAN, JJ., concur.

REVERSED AND REMANDED.    REHEARING DENIED.