Argued on demurrer to alternative writ April 8; writ allowed April 22, 1930

LOE v. BRITTING ET AL., ELECTION BOARD

(287 P. 74)

*Joseph K. Carson, Jr., Jay Bowerman* and *W. S. U'Ren,* all of Portland, for plaintiff.

*Stanley Myers,* District Attorney, of Portland for defendants.

*B. L. Eddy* of Roseburg, *Amicus Curiae.*

RAND, J. Plaintiff, who is a duly registered legal voter of Precinct No. 28 in Multnomah county but not a taxpayer, filed a petition herein praying for the issuance of a writ of mandamus to require the defendants, who constitute the election board of said precinct, to permit him to vote at an election to be held in said county on May 16, 1930, when the question of whether the county shall issue bonds aggregating the sum of $6,500,000 for the construction of a bridge across the Willamette river in the city of Portland will be submitted to the voters of said county for their adoption or rejection at the polls. An alternative writ was issued requiring the defendants to show cause why the writ should not be made peremptory. The cause shown was by demurrer and, upon the hearing of the demurrer, the defendants were represented by the district attorney of said county, who contended that under the provisions of chapter 281, Laws of 1929, plaintiff, not being a taxpayer, would not be qualified to vote at said election but stated that he admitted the truth of all the facts alleged in the petition and

writ, and also stated that the question was of great public importance and joined with plaintiff in urging that the question be decided before the holding of said election, and also stated that, unless said act is held to be unconstitutional, plaintiff and all others similarly situated within the county will be denied the right to vote at said election.

Because of the great public interest involved and of the inconvenience which might result to the public from the holding of an invalid election, the court is of the opinion that the question presented is one which should be determined in advance of said election, although it would decline to assume jurisdiction over the matter in advance of the election itself if it were not for such public interest.

██ The power of the county to issue the bonds, if authorized at said election, is not questioned. The only question for decision is whether the statute limiting the right to vote at said election to taxpayers is constitutional. In deciding this question, it must be borne in mind that the constitution of this state, as applied to the legislative department, is a limitation and not a grant of power and that, unless restrained by some constitutional provision of the state or federal constitution, the power of the legislative department to enact laws in respect to matters of this character is unlimited, and that, since no federal question is involved in this case, we must look to the state constitution alone in determining the power of the legislature to enact the law in question.

The material part of the act is as follows:

"That from and after the first day of January, 1930, no person shall be allowed to vote at any election held within this state, in the state at large or in any county or in any political subdivision or tax-levying

district, except incorporated cities and towns, upon the question of levying a special tax or issuing public bonds, unless such person shall be a taxpayer upon real or personal property situated within the particular tax-levying or bond-issuing district, as shown by the last preceding county assessment roll, assessed by the county assessor, and not assessed by the sheriff of the county in which the vote is taken."

It further provides that the above requirement "shall be in addition to any other requirement of law as to the right to vote at any such election."

Prior to the adoption by the people of sections 1 and 1a of article IV of the constitution, the power to enact laws was vested exclusively in the legislative assembly. By the adoption of these initiative and referendum amendments, the people withdrew from the legislative assembly the exclusive legislative power theretofore delegated to it and reserved the right to exercise it themselves under certain conditions, thereby creating in the people a dual capacity to make laws either through their chosen representatives or by the people themselves. In order for the people to exercise the initiative power, section 1 directs that "not more than 8 per cent of the legal voters shall be required to propose any measure", and that for the exercise of the referendum power there must be either a "petition signed by 5 per cent of the legal voters, or by the legislative assembly, as other bills are enacted." It also provides that:

"The veto power of the governor shall not extend to measures referred to the people. All elections on measures referred to the people of the state shall be had at the biennial regular general elections, except when the legislative assembly shall order a special election. Any measure referred to the people shall take effect and become the law when it is approved by a

majority of the votes cast thereon, and not otherwise. The style of all bills shall be: 'Be it enacted by the people of the state of Oregon.' ''

Now, it is contended that there is nothing contained in said section 1 of article IV which limits the power of the legislature to restrict to taxpayers alone the right to vote ''upon the question of levying a special tax or issuing public bonds.'' It is clear from the language of section 1 of article IV of the constitution that when, as declared therein, the people reserve to themselves power to propose laws and amendments to the constitution and to enact or reject the same at the polls independent of the legislative assembly, and also reserve power at their own option to approve or reject at the polls any act of the legislative assembly, the constitution was not referring to taxpayers alone but was referring to the legal voters of the state. The people as a whole reserved these powers to themselves and, while the people are composed of taxpayers and nontaxpayers, there is nothing in the constitution to indicate that the people intended to make such a classification. These amendments were adopted by the affirmative vote of the legal voters of the state and the powers reserved are to be put in operation by the legal voters themselves and not by any special class of such voters. ''Not more than 8 per cent of the legal voters shall be required to propose any measure by such petition,'' and the petition for the referendum, if set in motion by the legal voters, shall be signed ''by 5 per cent of the legal voters,'' and all measures are to be submitted and referred to the people which means the legal voters and not a part of them, no matter how the legislature may attempt to classify them. Whether a measure submitted to the people for adoption or rejection shall pass or not shall be determined by ''the whole number

of votes cast for justice of the supreme court at the regular election last preceding the filing of any petition for the initiative or for the referendum,'' and that shall be the ''basis on which the number of legal voters necessary to sign such petition shall be counted.'' This amendment also provides that:

''Petitions and orders for the initiative and for the referendum shall be filed with the secretary of state, and in submitting the same to the people he, and all other officers, shall be guided by the general laws and the act submitting this amendment, until legislation shall be especially provided therefor.''

We find nothing in section 1 of article IV showing any intention on the part of the people of this state that any measure should be submitted for approval or rejection at the polls to any less number than the entire electorate of the state, county or district, as the same may be. Nor is there anything contained in section 1a of article IV which shows that the people, in adopting it, were referring to any less than all legal voters. Among other things, it provides:

''The initiative and referendum powers reserved to the people by this constitution are hereby further reserved to the legal voters of every municipality and district, as to all local, special, and municipal legislation, of every character, in or for their respective municipalities and districts.''

Section 1 and section 1a of article IV of the constitution, although adopted separately, were adopted for the purpose of reserving to the people the initiative and referendum powers, the one as to state legislation, the other as to local and municipal legislation, and both are to be looked to in determining the meaning and intent as well as the effect to be given to their provisions.

Now, how can it be reasonably contended that constitutional provisions reserving powers to the people as a whole, and which can only be exercised by a petition signed by legal voters regardless of whether they are taxpayers or not, apply to legal voters when put in operation and to taxpayers when the measure is submitted to a vote? We think that the reasoning and principles announced in *Johnson v. Pendleton,* 131 Or. 46 (280 P. 873), are as applicable in the instant case as they were in that case and that we ought to be controlled by them.

But it is contended that the adoption or rejection of the measure to be submitted to the people authorizing the county of Multnomah to issue bonds is not legislation. While we do not agree with that contention, we do not deem it of any importance whatever. It is one of the measures which could not have been submitted to the people for approval or rejection under our constitution and laws prior to the adoption of the two amendments referred to and its approval or rejection by popular vote is an exercise of a power conferred by the amendments referred to. But we are not interested in that phase of the case. The right to vote in this case, conferred by the constitution, is a political right which attaches to every qualified voter seeking to cast his ballot at a general or special election and a statute which denies that right is unconstitutional because denying an existing constitutional right. The qualifications of legal voters are defined by section 2 of article II of the constitution. As originally adopted that section referred only to elections where public officers were to be elected. At the time of its adoption no other kind of an election except an election held to elect public officers was known to our law. At that time measures to be voted upon by the people under the initiative and

referendum powers had not even been contemplated as a part of the scheme of popular government. Then, in construing said section 2 of article II, it was held that the word "elections" referred only to such elections as were known to the framers of the constitution and to the people at the time of its adoption. That section, although adopted at an election held on the second Monday of November, 1857, was not amended until November 5, 1912, since which time it has been twice amended. The last amendment was adopted at a special election held on June 28, 1927. It now reads, in so far as relevant to this question, as follows:

"In all elections, not otherwise provided for by this constitution, every citizen of the United States, of the age of 21 years and upwards, who shall have resided in the state during the six months immediately preceding such election, and who shall be duly registered prior to such election in the manner provided by law, shall be entitled to vote; provided, such citizen is able to read and write the English language."

At the time of its amendment the word "elections," as understood by the people, had a much broader meaning than when first used in the constitution. We think that the word "elections," as used at the time of the adoption of this amendment, should be given the meaning the people understood it to have. It might mean a general or special election; it might mean an election held to elect a public officer, or to enact a law, to repeal one which theretofore had been enacted by the legislature, to authorize the issuance of bonds, or to authorize a special tax levy. How then can it be contended that as now used the word "elections" should be applied only to such as are held for the purpose of electing public officers? There is no other definition of a legal voter contained in the constitution except that con-

tained in the section just referred to. We must assume that it was intended to refer to every class of elections known to the constitution except those where a different provision of the constitution controlled the election or defined the rights of the persons entitled to vote thereat.

■■ In holding as we do that this statute is unconstitutional because taking away from plaintiff his constitutional right to vote, we are not concerned with the wisdom or expediency of the statute. Those are matters purely for the legislature when within the scope of the legislative power. We merely hold that, under the constitution as it now exists, the statute in question is unconstitutional and void, and that the holdings of this court in *Oregon-Wisconsin Timber Co. v. Coos County,* 71 Or. 462 (142 P. 575), and *Beirl v. Columbia County,* 73 Or. 107 (144 P. 457), are no longer applicable to the constitution as it now reads. While, as held in *Harris v. Burr,* 32 Or. 348 (52 P. 17, 39 L. R. A. 768), section 2 of article II does not define the qualifications of voters at school meetings, because elections held for the election of school directors are provided for and controlled by article VIII, section 3, of the constitution, it does control the qualifications of plaintiff as a legal voter at the election referred to. As said by Mr. Justice WOLVERTON in *Harris v. Burr,* supra:

"* * * The elective franchise conferred by section 2, article II, * * * was designed only to govern in all general and special elections not otherwise provided for by the constitution, and applies to the election of all officers known to the constitution, as well as to such as may be provided for thereunder aside from those provided for under the special power of the legislature to establish a uniform and general system of common schools."

Again, in *Ladd v. Holmes,* 40 Or. 167 (66 P. 714, 91 Am. St. Rep. 457), Mr. Justice Wolverton held that primary elections held within the city of Portland under an act known as the Morgan and Lockwood act, a law which is not now in force, came within the effect of section 2, article II, defining who shall constitute a legal voter. In that case he said, referring to section 2 of article II:

"* * * Its significance, as then ascertained, is that the individuals therein designated are entitled to vote at all elections authorized by law, not otherwise provided for by the constitution."

The effect of the decision in *Ladd v. Holmes* was that where an election is authorized by law and is such a one as is not elsewhere provided for by the constitution itself, as in respect to school elections, the qualifications of the voters entitled to vote thereat are defined by section 2 of article II of the constitution. With that principle we are in thorough accord.

For these reasons a peremptory writ should issue herein.

McBride, J., absent.