Submitted on briefs September 12, reversed October 10, 1596

IVIE ET AL *v.* CITY OF OCEANLAKE ET AL

302 P. 2d 221

Frank S. Sever, Portland, and Raymond G. Wood, Oceanlake, for appellants.

No appearance for respondents.

TOOZE, J.

This is a suit for a declaratory judgment, brought by E. R. Ivie and Maude Walling Wanker, as plaintiffs, against the city of Oceanlake and others, as

defendants, to determine the validity of a special election conducted to annex certain territory to the city of Oceanlake. After defendants filed their answer, the plaintiffs, without replying, moved for judgment on the pleadings. The trial court found that there were no disputed issues of fact, allowed the motion, and entered a decree declaring the election void. Defendants appeal from this decree.

■ Our consideration of this matter is confined to the allegations of the complaint and answer, there being no reply. The facts stated in the pleadings must be construed most favorably to the defendants, because, for the purpose of their motion for judgment on the pleadings, plaintiffs are deemed to admit both the denials of certain allegations of the complaint and the truth of the affirmative allegations of the answer. *Straub v. Oregon Electric Ry. Co.,* 163 Or 93, 96, 94 P2d 681; *Burch v. Hotchkiss,* 143 Or 28, 30, 21 P2d 209.

From the complaint the following facts appear. On May 3, 1955, the city council of the city of Oceanlake called a special election to be held on June 3, 1955, for the purpose of determining whether the voters of a certain area, which is a part of the Devil's Lake rural fire protection district, Lincoln county, Oregon, and hereinafter referred to as the "territory," desired to have the territory annexed to the city of Oceanlake, hereinafter referred to as the "city." Notice of the coming election was given in compliance with the notice statute. On the day of the election, 27 persons, residents of the territory, appeared at the voting booth and requested that they be allowed to vote. In each case the election officials challenged their right to vote. Having been challenged, each insisted that the officials

administer to them the oath provided in ORS 250.390, as follows:

"You do solemnly swear [or affirm] that you are a citizen of the United States; that you are of the age of 21 years; that you have been a resident of this state for six months next preceding this election; that you now reside in this precinct; that you have not yet voted at this election, and that your true name is as you represent it to be."

The election officials refused to give the oath, but instead demanded the following oath:

"You do solemnly swear (or affirm) that you are a citizen of the United States; that you are of the age of 21 years; that you have been a resident of this State for six months next preceding this election; that you now reside within the area proposed to be annexed; *that you have been a registered voter within the Sunset Precinct in Lincoln County, Oregon, for not less than 30 days preceding this election;* that you have not yet voted at this election and that your name is as you represent it to be." (Italics ours.)

All these persons were denied the right to vote, and the proposal was passed by those voting with 117 "yes" votes to 99 "no" votes.

The plaintiffs allege that all 27 persons were registered voters in the territory; that their names were on the official voters' list; and that if they had been allowed to vote, all would have voted against annexation.

The defendants admit all the allegations of fact contained in the complaint, except that they deny that the names of eight of the persons were on the official voters' list, and also deny that the refusal of the election officials to allow these persons to vote was wrongful. In addition to the denials, the answer contained

the affirmative allegations of fact that the registration of all these persons had occurred between May 8, 1955, and June 1, 1955, or within the 30-day period mentioned in the revised form of oath presented by the election board.

Three arguments were advanced in the trial court for plaintiffs: (1) that the election officials erred in requiring an oath different from that provided in ORS 250.390, supra, and which the applicants for voting could not take, and thereby unlawfully prevented the challenged electors from voting in the election; (2) that the challenged electors became duly registered voters when the procedure for registration was completed, even though the county clerk was violating a statute in so registering them within the 30-day period prior to election; and (3) that the election is void because the statutory procedure that allows notice of an election to be given 30 days before the election and at the same time prohibits registration within that period of 30 days before the election is unconstitutional.

■ In answer to plaintiffs' first contention the defendants argue that the voters' oath set forth in ORS 250.390 is directory only, and, therefore, the officials had the right to modify the oath. If this were true the election officials could modify the oath to fit every situation. Such a procedure would give the officials the power finally to determine questions of both law and fact at the polling booth. This was not the intent of the legislature as shown by ORS 250.400. This latter statute provides a procedure to be followed in the event that a voter takes the prescribed oath, is still challenged, and still insists that he has the right to vote, and casts his ballot. In that event all questions of law or fact are for the moment resolved in favor of the voter, but the ballot so cast is marked for

identification so that if it is later proved that the challengers were correct, the ballot can be thrown out. The election board, however, is wholly without authority to add to or subtract from the oath provided by the statute.

Because the election officials attempted to administer an oath different from that set out in ORS 250.390, they violated the provisions of the statute and thereby prevented 27 electors from *casting their ballots.*

However, a clear distinction must be made between the right to cast a ballot subject to challenge and *the right to vote.* If, as a matter of law, electors who had not been registered for more than 30 days prior to an election are not qualified voters, then all the qualified electors who wished to vote at the election did in fact vote, and the annexation proposal passed, 117 "yes" votes to 99 "no" votes.

 It is obvious that the election is not void solely because unqualified electors were wrongly denied the right to cast ballots, if that be the case; that is to say, if only qualified electors in fact voted, the election is valid even though *unqualified voters* were illegally prevented from casting ballots.

As we said in *Tazwell v. Davis,* 64 Or 325, 340, 130 P 400:

> " * * * The main purpose of the law is to prevent persons who are not qualified electors from exercising the right of suffrage. It is not the purpose of the law that a large number of qualified electors who have cast their ballots, which have been received and counted by the election judges, should be disfranchised on account of the judges of election not following the correct procedure by reason of an error in judgment, when the real purpose of

the law has been attained, and only qualified electors have been allowed to cast their ballots.''

It is, therefore, required that we decide the question whether a person who registered less than 30 days prior to the election was a qualified voter and, therefore, entitled to vote. To determine this question, it is necessary to consider Oregon Constitution, Art II, § 2, which provides:

"In all elections, not otherwise provided for by this constitution, every citizen of the United States, of the age of 21 years and upwards, who shall have resided in the state during the six months immediately preceding such election, and who shall be duly registered prior to such election in the manner provided by law, shall be entitled to vote, provided such citizen is able to read and write the English language. The legislature, or the people, through the initiative, may prescribe the means of testing the ability of such citizen to read and write the English language. Any act which has been passed by the legislative assembly, and which purports to execute and carry into effect the provisions of this section, shall be deemed to have been passed pursuant to, and in accordance herewith, and hereby is ratified, adopted and confirmed, the same as if enacted after the adoption of this amendment. The legislative assembly, or the people through the initiative, may by law require that those who vote upon questions of levying special taxes or issuing public bonds shall be taxpayers."

Respecting annexation of territory to an established city, ORS 222.110, in part provides:

" * * * The legislative body of any city may submit the question to its registered voters and to the registered voters residing in the territory proposed to be annexed at a special election to be held for that purpose, or at a general election."

As to registration of voters authorized to participate in an election, ORS 247.050 (1) provides:

"(1) The county clerk shall register any qualified elector who requests to be registered. However, he shall refuse to register any elector during 30 days next preceding any general or primary election or any special election held throughout the county. If the special election is not held throughout the county, he shall not register any electors residing in any precinct in which the special election is to be held during the 30 days next preceding the special election."

If the challenged electors in this case were not qualified to vote, it is because ORS 247.050 (1) prevented them from being duly registered, as required by the constitution and by ORS 222.110, supra.

This statute (ORS 247.050) is a directive to the county clerk, and in this sense it is analogous to the statute we considered in *State ex rel. Postelthwait v. Clark*, 143 Or 482, 490, 492, 22 P2d 900. In that case a statute directed the county clerk to remove the registration card of anyone who had not voted within the preceding two years; the effect of such removal was to cancel the registration of the elector. In holding that the failure of the county clerk to remove the registration cards did not have the effect of giving the delinquent voters the right to vote, we said:

"* * * The failure of the county clerk or judges of election to discharge any of the duties imposed upon them in connection with the registration of voters would neither give to nor take away from, any elector the right of franchise."

■ In the instant case the clerk was directed by statute not to register anyone within the 30-day period. The challenged electors were not registered prior to May 3,

which was 30 days before the election. Because the clerk attempted to register them during a time when he was prohibited by law from so doing, his act could not have the effect of giving the elector the right to vote at this election. It is our opinion that the challenged electors, not having been duly registered within the time provided by law, were not qualified to vote.

■ It is argued that ORS 247.050 is unconstitutional when applied to a special election, notice of which is given at the same time as the right to register is suspended under the statute. The argument is that a valid special election may not be held under circumstances which prevent interested voters from becoming fully qualified, through registration, after they are aware of the fact that an election will be held. The basis of this argument is the assertion that the voters of this state when they amended the constitution to allow for the registration of voters understood "registration" to be a method for predetermining the qualifications of voters and a method for preventing fraud in the conduct of elections; they did not understand it as a qualification for voting equal in importance to the age or citizenship requirements; they did not understand it as a prerequisite to the right to vote.

This is an appealing argument, and this case is a strong one for its application. The plaintiffs and the challenged voters are residents of the territory; one of the plaintiffs is a property owner, as undoubtedly are several of the challenged voters. They are directly interested in the fate of an annexation proposal which affects the territory in which they reside and own property. It is easy to understand why the right to vote, though not by them considered of sufficient importance to induce registration prior to this election, was in this case vital to them.

However, this argument loses much of its force when met by the fact that statutes of the type here assailed were in effect in many states long prior to the registration amendment to the Oregon Constitution which was adopted on June 28, 1927. For example: West's Annotated California Codes, Vol. 29, §§ 122, 1722; Annotated Laws of Massachusetts, ch 51, § 26; ch 54, § 63; Michigan Statutes Annotated, §§ 6.1497, 6.1653.

■ This very question was considered in 1908 in *People ex rel. Peck v. City of Los Angeles*, 154 Cal 220, 230 97 P 311. That case involved the annexation of certain territory to the city of Los Angeles. The Supreme Court of California said:

> " * * * Every voter is given the same opportunity to be registered and so be prepared, at any election which may happen, to exercise his voting privilege. It is of no moment to say that electors do not know that a special election will be had at any particular time. They do know, however, that special elections are had, and in contemplation of law are charged with notice that special elections for annexation of territory and for many other purposes are provided for by law, and may be held at any time, and within a period which will not give them an opportunity to vote thereat, unless registered when the election is called. The registration law makes no distinction as to elections, and does not take at all into consideration, special elections as such. Its policy is that electors shall be prepared by previous registration to vote at any election which occurs, whatever its character, and there can be no valid reason presented why a special election called in express conformity to the statute should be annulled merely because notice of it was too short to permit some electors to register and participate in it, when they were already given

under the registration law ample time and opportunity to be prepared to do so.''

Oregon has one of the most liberal registration laws. A citizen may register at any time during the year, except during the 30 days immediately preceding an election. This normally permits registration for nine or ten months of each year. Persons desiring to vote have a maximum opportunity to register.

We had occasion to consider this question in *Roy v. Beveridge,* 125 Or 92, 100, 266 P 230. In that case 32 days' notice was given, and the registration books were closed 30 days before the election. Justice McBRIDE did not discuss the constitutional question, but stated in conclusion:

"It seems clear both from the title of the act and the section above quoted that the County Clerk acted entirely within his duty in closing the registration books up to the date of the proposed election and that the plaintiff will lose the privilege of voting on the question of merger of power companies. However, if she exercises the same zeal to have her registration changed after the special election as she has under existing circumstances, she will have the inestimable privilege of voting at the May primaries and at the November election."

It is axiomatic that taking an interest in the politics of his and her city, county, state, and nation is one of the most important duties of citizenship. Every citizen should at all times be certain that he or she, as the case may be, has taken the necessary steps qualifying him or her to vote; and just as important, that at each election he or she exercises this franchise. Registration is the first important step toward qualifying as a voter. Had the electors in this case performed this primary duty of citizenship, they would

not have been faced with the situation which confronted them when they offered themselves as voters at this special election. They are simply victims of their own inexcusable negligence.

■ We are unanimously of the opinion that the statute challenged in this case is constitutional. Article II, § 2, Oregon Constitution, supra, vests in the legislature the necessary authority to enact this law, and the requirements of the statute are reasonable. The election in this case was a valid election, and by reason thereof the territory involved was annexed to the city of Oceanlake.

The decree is reversed. Defendants to recover costs.