Argued June 11, affirmed July 23, 1958

# WRIGHT ET AL v. BLUE MOUNTAIN HOSPITAL DISTRICT ET AL

328 P. 2d 314

*Michael S. Mogan,* Canyon City, argued the cause and filed briefs for appellants.

*Howard A. Rankin,* Portland, argued the cause for respondents. On the brief were Gordon Wilson, John Day, and Shuler, Sayre, Winfree & Rankin, Portland.

Before PERRY, Chief Justice, ROSSMAN, LUSK, WARNER, McALLISTER and SLOAN, Justices.

WARNER, J.

This is an action for a declaratory judgment, challenging the validity of the formation of the Blue Mountain Hospital District (called the District), a municipal corporation, in Grant county. From a decree declaring the District to be a valid and subsisting corporation, the plaintiff taxpayers appeal.

Following the procedures provided by Oregon Laws 1949, ch 548 (now ORS 441.205 to 441.410, inclusive), an election was had on November 8, 1949, and the District was declared to be incorporated as of November 15, 1949, and has continuously functioned and operated a hospital facility in Grant county ever since the fiscal year 1950-51.

The parties have stipulated that the sole question presented for our resolution is whether the 90-day

residential provision for electors voting at the election on November 8, 1949, is in conflict with the Oregon Constitution.

This provision was established by Oregon Laws 1949, ch 548, § 3, p 880 and later codified as ORS 441.245 and as we will hereinafter refer to it. It reads:

"No person may vote at an election under ORS 441.230 unless he is an elector of this state and has resided in the district [the proposed hospital district] for a period of not less than 90 days next preceding the election."

The justiciable controversy arises from the plaintiffs' contention that ORS 441.245 is unconstitutional, thereby invalidating the election of November, 1949. The defendants argue to the contrary.

■ There is always a presumption in favor of the constitutionality of a legislative enactment. Until the contrary is shown beyond a reasonable doubt, it is the duty of the courts to assume that the challenged statute is valid. *City of Portland v. Goodwin*, 187 Or 409, 416, 210 P2d 577; *State v. Anthony*, 179 Or 282, 301, 169 P2d 587; *Smallman v. Gladden*, 206 Or 262, 279, 291 P2d 749; *State v. Bailey*, 115 Or 428, 434, 236 P 1053.

■ It is also a canon of statutory construction that if a legislative enactment can be given any reasonable construction consistent with its validity, such interpretation should be adopted. *Gantenbein v. West*, 74 Or 334, 340, 144 P 1171; *Federal Cartridge Corp. v. Helstrom*, 202 Or 557, 565, 276 P2d 720; *City of Portland v. Goodwin*, supra, at p 416.

■ Our constitution, like all other state constitutions, is not to be regarded as a grant of power, but rather a limitation upon the powers of the legislature. The people in adopting it, committed to the legislature the whole law making power of the state, which they did

not expressly or impliedly withhold. Plenary power in the legislature for all purposes of civil government is the rule and a prohibition to exercise a particular power is an exception. It is, therefore, competent for the legislature to enact any law not forbidden by the constitution or delegated to the federal government or prohibited by the Constitution of the United States. *Jory v. Martin*, 153 Or 278, 284, 56 P2d 1193, and cases there cited; *Marr v. Fisher*, 182 Or 383, 387, 187 P2d 966; *State ex rel. Powers v. Welch*, 198 Or 670, 672, 259 P2d 112. Such freedom of legislative action within such bounds is applicable to election laws. *Loe v. Britting*, 132 Or 572, 574, 287 P 74.

When we scan the constitution, we find only three sections that treat with the qualifications of voters. These are:

Art 2, § 2: "In all elections, not otherwise provided for by this constitution, every citizen of the United States, of the age of 21 years and upwards, who shall have resided in the state during the six months immediately preceding such election, and who shall be duly registered prior to such election in the manner provided by law, shall be entitled to vote, provided such citizen is able to read and write the English language. The legislature, or the people, through the initiative, may prescribe the means of testing the ability of such citizen to read and write the English language. Any act which has been passed by the legislative assembly, and which purports to execute and carry into effect the provisions of this section, shall be deemed to have been passed pursuant to, and in accordance herewith, and hereby is ratified, adopted and confirmed, the same as if enacted after the adoption of this amendment. The legislative assembly, or the people through the initiative, may by law require that those who vote upon questions of levying special taxes or issuing public bonds shall be taxpayers. * * *"

Art II, § 8: "The Legislative Assembly shall enact laws to support the privilege of free suffrage, prescribing the manner of regulating, and conducting elections, and prohibiting under adequate penalties, all undue influence therein, from power, bribery, tumult, and other improper conduct."

Art II, § 17: "All qualified electors shall vote in the election precinct in the County where they may reside, for County Officers, and in any County in the State for State Officers, or in any County of a Congressional District in which such electors may reside, for Members of Congress."

The only reference to the residential status of an elector is found in Art II, § 17. There it will be observed that the situs for voting is established in the "precinct in the County where they [the electors] may reside" when voting for (1) county officers in any county, and in any county of the state for (2) state officers, or in any county of a congressional district in which the elector may reside when voting for (3) members of congress.

Notwithstanding that the constitution expressly recognizes the existence of municipal corporations (Art XI, § 2), it is silent as to the residential requirements of voters living or being within the boundaries of these lesser governmental units. Nor does it contain any provision expressly limiting legislative action on the subject or contain provisions from whence such a limitation of legislative power may be implied. This is an area which is at large for reasonable regulatory legislative action.

■ That the legislature cannot add to the constitutional qualifications of voters, unless expressly provided therein, is too well established to admit of contradiction. *Livesley v. Litchfield,* 47 Or 248, 83 P 142; *Loe v. Britting,* supra; *Peterkort v. East Washington County Zoning District,* 211 Or 188, 313 P2d 773, 314

P2d 912; *People of North Carolina ex rel. Van Bokkelen v. Canaday*, 73 NC 198, 21 Am Rep 465; *Jones v. School District No. 96*, 144 Okla 10, 289 P 268; *State of Wisconsin ex rel. Knowlton v. Williams*, 5 Wis 308, 68 AD 65; *Quinn v. State*, 35 Ind 485, 9 AR 754; 1 Cooley's Constitutional Limitations (8th ed), p 140, n 5, and cases cited.

We turn again to ORS 441.245, supra. How is it to be construed? Does the 90-day residential period fall within and become a part of the six-month constitutional residential period, or is it to be read as an additional residential qualification, that is, six months residence in the state, plus 90-days residence in the district?

Obviously, if it is to be taken as an additional period of residence beyond the constitutional period of six months, it is unconstitutional. With this conclusion the plaintiffs and defendants are in accord. Both concur in the construction which places the 90-day period as being an element of time encompassed by the six-month residential voter qualification. This conclusion is further fortified by the well-established rule of statutory construction that when one construction will make a statute void for conflict with the constitution, and another will render it valid, the latter will be adopted though the former at first view is otherwise the more natural interpretation of the language. As a corollary to this rule, every intendment should be made to favor the constitutionality of a statute and the legislature will be presumed to act in view of the constitution and not to intend a violation of its provisions or the enactment of an invalid law. *Swift & Co. and Armour & Co. v. Peterson*, 192 Or 97, 108, 233 P2d 216, and cases there cited; 2 Lewis' Sutherland, Statutory Construction (2d ed) 927 § 498.

Although both parties very properly read the challenged 90-day residential period as being included in and as an element within the six-month period established by Art II, § 2, they part on the question of its constitutional validity. Plaintiffs call it a "qualification" beyond the power of the legislature to enact. Defendants declare it a reasonable election regulation within the bounds of legislative authority.

■ The key to the solution of our problem is found by turning to the first sentence of Art II, § 2 of the Constitution, wherein provision is made that in "all elections, not otherwise provided for by this constitution, every citizen * * * who shall have resided in the state during the six months *immediately preceding such election* * * * shall be entitled to vote." (Emphasis ours.) The test of a qualified voter under the constitution is not one who has resided in the state six months, but rather during the particular *six months period* terminating the day before any given election.

With this constitutional test in mind, we turn again to re-examine the language of the challenged statute (ORS 441.245). There we find the specific test to read residence in the district "for a period of not less than 90 days *next preceding the election.*" (Emphasis ours.) We note that the term of district residence, like the constitutional period of six months, terminates the day before the election. It, therefore, follows that the 90-day period provided by ORS 441.245, supra, is coincidental with and becomes an integral part of the six-months constitutional period. Or, to put it otherwise, the 90-day residential period required by ORS 441.245 is unavoidably the last 90 days of the six months constitutional term. The residential sufficiency of both are determined on election day by counting backward on the calendar the required length of time,

excluding, of course, in such computation, the day of election.

The statute adds nothing to the requirement of residence *in the state*. It only fixes as a qualification for voting in a hospital district, the place where such residence must be for the last 90 days of the constitutional period.

Has the legislature power to enact such residential requirement as found in the statute under review, notwithstanding that it is not in the nature of an additional elector qualification offensive to the provisions of the constitution?

■ It seems clear that even though the constitution prescribes the qualification of a voter, there is a wide field for legislative action in determining how such qualifications shall be ascertained and in prescribing regulations for the prevention of fraud and abuses. 18 Am Jur 214, Elections, § 52.

Concerning the legislative right to thus protect the ballot against election abuses, 18 Am Jur, supra, § 56, at pp 216-17 makes this statement:

> "State Constitutions and statutes usually require as a prerequisite to the right to vote that the elector shall have been a resident of the state, county, and voting district for a specified period prior to the election. The purpose of such a provision is twofold: (1) It constitutes an invaluable protection against fraud through colonization and the inability to identify persons offering to vote; and (2) it further affords some surety that the voter has in fact become a member of the community and that, as such, he has a common interest in all matters pertaining to its government and is therefore more likely to exercise his right intelligently."

In the absence of constitutional limitations, the legislature may prescribe residence as a qualification

to voting. 29 CJS 39, Elections § 19; 1 Cooley's Constitutional Limitations (8th ed), p 140, supra.

■ Even though the legislature is vested with the regulatory powers to which we make reference, such regulations must be reasonable, uniform and impartial. They must not have for their purpose, directly or indirectly, to deny or abridge the constitutional right of citizens to vote, or unnecessarily impede its exercise; and if they do, they must be declared void. 2 Cooley's Constitutional Limitations (8th ed), p 1370; 29 CJS, supra, § 9, p 30.

Two frequently-cited cases bearing on the subject of legislative enactments providing certain residential restrictions as a condition to voting in a given area are: *People v. Graham,* 267 Ill 426, 108 NE 699, and *Howard v. Skinner,* 87 Md 556, 40 A 379. We make particular reference to these cases because both contain excellent statements as to the reasons which justify such type of legislative regulation.

In the Illinois case, the court said, at p 705:

"The requirement that the party offering to vote shall reside within the district which is to be affected by the exercise of his right has been adopted in most, if not all, jurisdictions to enable persons residing in the neighborhood where the voter resides to become acquainted with him and know that he is a bona fide resident not only of the state and county but of the district where he attempts to vote. * * *"

In the Maryland case, we find this statement at p 380:

"* * * The object in prescribing residence as a qualification for the exercise of the right of suffrage * * * is not merely for the purposes of identifying the voter, and as a protection against fraud, but also that he should become in fact a

member of the community, and, as such, have a common interest in all matters pertaining to its government. * * *"

We find no Oregon cases dealing with the precise problem projected by this appeal. In those speaking to the subject of the legislative power to make regulations concerning the exercise of the voting privilege, Oregon decisions uphold that right. All which we hereinafter cite are, however, directed primarily to the question of regulation through the media of registration laws. Although some decisions were made prior to the constitutional amendment of 1927, conferring a specific power on the legislature to enact registration laws, their validity as to the regulatory powers of the legislature in the area of elections is not impaired thereby.

In *Ladd v. Holmes*, 40 Or 167, 66 P 714 (1901), Mr. Justice WOLVERTON, at page 180, makes this observation:

"* * * It is not true that every citizen accorded the elective franchise under the constitution is entitled to vote at all elections. A citizen of one county is not entitled to vote at an election held in another county for local officers, and a citizen of one precinct is not entitled to vote in another, nor of one city or town in another; so that the right of all electors to vote does not extend to all elections authorized by law, but is dependent largely upon the place of residence, and the nature of the election to be held. * * *"

One of the earliest of these cases, subsequent to *Ladd v. Holmes*, supra, was *Portland v. Coffey*, 67 Or 507, 135 P 358 (1913). While declaring a certain registration act (ch 323, Oregon Laws 1913) unconstitutional, it recognizes that a reasonable enactment to

protect the voting privilege is in order, notwithstanding the provisions of Art II, § 2. At page 514 we find:

> "Article II, Section 2 of the Constitution of this state as amended November 5, 1912 (Laws Or. 1912, p 7), prescribes the qualifications of electors. Though the legal right of a citizen is thus recognized, it is conceded that the legislative assembly may by reasonable enactment protect the right so as to preclude disqualified persons from voting and that any registration law which tends to purify the ballot and to prevent repeating ought to be upheld in the interest of good government. * * *"

The case of *Roy v. Beveridge*, 125 Or 92, 266 P 230 (1928), raised a question as to the legislative right to lay restrictions on the time for closing registration books. The court, speaking through Mr. Justice McBride, found that an act directing the closing of the registration books 15 days prior to a special election with a resulting denial of an opportunity to vote of some voters otherwise qualified, was a valid legislative enactment.

The more recent case of *Ivie v. City of Oceanlake*, 208 Or 417, 302 P2d 221 (1956), required that we determine whether a statute (ORS 247.050(1)), directing that registration books be closed 30 days next preceding any special election held throughout the county, was in violation of the constitution. We were there unanimously of the opinion that the challenged statute was constitutional and that Art II, § 2 of the Oregon Constitution vests in the legislature the necessary authority to enact such a law and the statutory requirements were reasonable. (208 Or at p 428)

■ We hold that the residential requirement found in ORS 441.245, supra, is a reasonable legislative regulation. It operates only against those whose constitutional qualification of six months has not been com-

pleted within 90 days prior to the election. It is a mild restraint on those who are newcomers to the district and who "as such, have [not yet] a common interest in all matters pertaining to its government." *Howard v. Skinner*, supra. It insures and "enables persons residing in the neighborhood where the voter resides to become acquainted with him and know that he is a bona fide resident not only of the state and county but of the district where he attempts to vote." *People v. Graham*, supra. In short, it is a modicum of protection against those who have been living in the district but a short time or who have no intention of establishing a permanent residence in the area, and hence have little incentive, interest or opportunity to become informed voters on the community needs and especially for such important social services as a district hospital.

We find that the provisions of ORS 441.245 are not unconstitutional; that the election of 1949 was regular; and the resultant hospital district validly created.

Affirmed.

McALLISTER, J., concurs in the result.

PERRY, C. J., not participating.