Argued January 6; motion to dismiss appeal denied and judgment affirmed January 20, 1931

STATE EX REL. DETHLEFS ET AL. *v.* FENDALL ET AL.

(295 P. 191)

*William G. Hare,* of Hillsboro (E. B. Tongue, District Attorney, and Hare, McAlear & Peters, all of Hillsboro, on the brief) for appellants.

*Loyal M. Graham,* of Forest Grove, and *J. O. Bailey,* of Portland, for respondents.

CAMPBELL, J. This action was submitted in the circuit court on an agreed statement of fact as follows:

"It is hereby stipulated by and between the parties hereto, through their respective attorneys, that the following constitute a statement of facts involved in this case, and that they cover all of the matters in controversy between the parties:

"1st. That Dethlefs School District No. 91 is located nearer the high school in Gaston, Oregon, than the high school in Forest Grove, Oregon.

"2d. That on the 21st day of March, 1930, there was thirty-three or more legal voters residing within Dethlefs District No. 91.

"3d. That the petition from Dethlefs District, when filed March 21, 1930, contained the names of 13 legal voters.

"4th. That prior to the time set for the hearing of said petitions, which was April 21, 1930, at the hour of 10 o'clock a. m., five of the persons who had signed the petition from Dethlefs District, filed a written withdrawal from said petition with the boundary board.

"5th. That said petition from Dethlefs District and the names thereon was considered and checked by the district boundary board on the 21st day of April, 1930.

"6th. That Timber and Westimber District No. 78 is located nearer the city of Vernonia, Oregon, than the high school in Forest Grove, Oregon.

"7th. That there were more than 30 legal voters in Timber and Westimber on the 21st of March, 1930.

"8th. That the petition from Timber and Westimber District when filed with the boundary board on March 21, 1930, contained the names of 18 legal voters.

"9th. That prior to the time set for hearing of the petitions, which was April 21, 1930, at the hour of 10 o'clock a. m., eleven of the persons who signed the Timber and Westimber petition filed a written withdrawal of their names from said petition with the boundary board.

"10th. That a new petition from Timber and Westimber containing the names of 18 legal voters of said district was filed with the district boundary board on the 21st day of April, 1930, at 8 o'clock a. m.

"11th. That the petition from Timber and Westimber District was with all other petitions then on file, considered and checked by the district boundary board on the 21st day of April, 1930.

"12th. That a number of supplemental petitions were filed on April 21, 1930, with the district boundary board, and after considering and checking the petitions then on file, the district boundary board took the following action: 'Motion made by Livermore and passed by board to secure the decision of the district attorney of the legality of the supplementary petitions, and to postpone the final action on the question of the status of these petitions until Wednesday, April 30, 1930, at 10 o'clock a. m.'

"13th. That on April 30, 1930, at 8 o'clock a. m., a supplemental petition was filed for Dethlefs District containing the names of 4 persons, 2 of whom did not move into Dethlefs District until March 9, 1930. Testimony shall be taken with respect to the consideration and action upon said supplemental petition.

"14th. That upon the 30th day of April, 1930, the boundary board made an order directing that an election be held on the third Monday in June, in all of said districts.

"15th. That 24 persons voted in Dethlefs District on the question of the formation of said Union High School District; that there were 7 voted in favor of the union high school and 17 against it.

"16th. That 94 persons voted in Timber and Westimber District on the question of the formation of the Union High School District; that 33 voted for the formation and 61 against it.

"17th. All of the proceedings with respect to the organization of said Union High School District and the election of said defendants as directors thereof, are admitted to be legal and regular, except with respect to the petitions and withdrawals and supple-

mental petitions from said Timber and Westimber and Dethlefs Districts, which were filed and in manner and form as hereinbefore set forth.

"18th. Nothing herein contained shall be as admitting paragraphs 1, 37 and 38 of said Answer, which paragraphs are denied by the plaintiff."

On this statement of facts the circuit court found for the defendants and entered a judgment confirming the organization of Union High School District No. 5, Washington county, Oregon, and confirming the defendants as the duly elected and qualified directors of said district.

From this judgment an appeal was taken to this court.

The legal questions involved are: (1) Do petitioners for the organization of a union high school district have the right to withdraw their names from the petition after it is filed and notice given, and before final action by the district boundary board, so as to oust the board of jurisdiction or further proceeding in the matter? (2) May supplemental petitions containing additional names of legal voters be filed with the board after the original petitions have been filed and notice given, and before the time set for hearing and before final action is taken by the board?

The law under which a union high school district is created, and under which the present controversy arose, is stated in Oregon Code 1930, § 35-3703, as follows:

"Whenever two or more contiguous school districts * * * desire to consolidate for the purpose of forming a union high school district, and 10 or more of the legal voters in each of said districts shall have filed with the district boundary board of the county * * * a petition signed by each of said voters and directed to said board that said districts * * *

be united for high school purposes only, which petition shall specify the districts \* \* \* proposed to be so united, and the site for the buildings of said proposed union high school district, the district boundary board of said county \* \* \* shall cause notices of the hearing of said petitions by the said board \* \* \* and that remonstrances against the formation of said union high school district may be filed as hereinafter provided, to be posted in three conspicuous places in each of said school districts by the clerk thereof for a period of twenty days prior to the date upon which said petitions are to be considered and acted upon by said board \* \* \*; provided further, that a school district maintaining a standard high school within its district shall not be included in a union high school district except upon a majority vote in favor thereof at an election held for that purpose in such school district. If ten or more legal voters in any of said districts \* \* \* at any time before the date for the hearing of said petitions, file with the district boundary board \* \* \* their written remonstrance, signed by each of them, against the formation of said union high school district, the district boundary board shall proceed to give notice, as hereafter in this act provided, of an election to be held in all of the districts proposed to be united, \* \* \* for the purpose of submitting to the legal voters therein the question of the formation of such union high school district. If no such remonstrance is filed with said district boundary boards \* \* \* prior to the date set for hearing said petitions for the formation of a union high school district by said boundary board \* \* \* may thereafter proceed to unite said school districts \* \* \* into a union high school district for high school purposes only. In the event that a remonstrance against the formation of such union high school district has been filed with the said district boundary board \* \* \* within the time and in the manner hereinbefore provided, the district boundary board \* \* \* shall within ten days after the date of the hearing upon the petitions by said boundary board, direct the

respective school boards of the districts proposed to be united * * * in the said union high school district to state in the notice of the next annual school meeting or election in said school districts, or at a special meeting or election therein called for that purpose, the time of such meeting or election to be designated by said boundary board * * * that the question of uniting said school districts * * * for high school purposes only, thus forming a union high school district, will be submitted at said election. * * *''

The other portions of this section refer to the manner of holding the election and canvassing the votes, all of which is admitted was duly and regularly carried out in the formation of this particular union high school district.

The question submitted in this cause appears to be one of first impression in this court. This leaves the court free to announce a rule of interpretation that may be easily understood, and at the same time not overturn any of the organized high school districts heretofore organized. The statute says:

''The board shall cause notice of the hearing of the petitions to be posted in three conspicuous places in each of the districts for 20 days prior to the date in which said petitions are to be considered and acted upon by the board.''

When the petitions are filed they would naturally receive a cursory examination, and the board would still have the right to examine and hear any objections either to the form of said petitions, or whether the petitioners were duly qualified as such, as well as to entertain any remonstrances that may be filed against the proceeding. If at the hearing it should find that the petitions are in due form, signed by the required number of legal voters; that due notice had been given; it would have jurisdiction to proceed, if no remonstrances were filed, to unite the districts for high

school purposes only; or if remonstrances were filed, notify the clerks in each of the several districts to call an election.

■ The chief object of the hearing is to ascertain whether the board shall organize the district, or that question be submitted to a vote of the legal voters of the several districts involved. At the hearing should the petitions be attacked for fraud or misrepresentation, that would present a different question than is raised in the issues of this case. Here it is admitted that the petitions are all in due form and voluntarily signed by the required number of legal voters. The only question presented is: Has a petitioner in this kind of a proceeding the right, up to the very last moment of the time set for hearing, to withdraw his name and stop further progress? We think not.

When one has voluntarily and solemnly affixed his signature to a petition which has caused the district boundary board to go to the trouble and expense of having three notices posted in each of the nineteen school districts, and has signed and so induced others to join with him in procuring signatures of at least ten legal voters in each of the nineteen school districts, he should be estopped from coming in at the last moment and saying, "Notwithstanding that I was a party to all these proceedings, now I desire to withdraw, regardless of the wishes of the other two or three hundred petitioners." Surely a man has the right to change his mind as often as he may see fit, but he has not the right to change his mind, after affixing his signature, to the injury or inconvenience of others.

■ This does not deprive him of any right. He still has the right to sign a remonstrance, and any attempt to withdraw his name should be considered as a remon-

strance; and he has still the further right when the matter is submitted to a vote of the legal voters, to vote against the proposition, and to get as many other legal voters as he can to do the same thing.

It is common knowledge that a high-powered petition hawker can make many people's minds, so far as signing petitions or remonstrances are concerned, as "variable as the shade, by the quaking aspen made." Affixing one's signature to a written document of any nature should not be an idle gesture, and where that signature has the tendency to, and does influence others in their course of conduct, one should not afterwards be heard to say, "I have changed my mind."

The cases cited by the learned counsel for appellants are not squarely in point, as they are not determining identical matters under a similar law. Much indeed has been written on this question. The decisions are by no means uniform in the different states. Much sound logic and reasoning support the different rules adopted.

 The common sense, practical rule for this state, where so many governmental activities are initiated by petition, is that the petitions must speak as of the time they are officially presented to the district boundary board, and official cognizance is taken of them by the board causing the requisite notices to be given. Before that time names may be added or withdrawn. After that time the petitions are not subject to such change. Remontrances may be filed any time prior to the time set for hearing. This rule fulfils all the requirements of the statute, and will to a large extent eliminate opportunity for fraud and undue turmoil.

Taking this view, it follows the judgment of the lower court is affirmed.

Bean, C. J., Brown and Kelly, JJ., concur.