Argued at Pendleton May 2; reversed May 31; rehearing denied
June 27, 1933

## STATE ex rel. POSTLETHWAIT v. CLARK

(22 P. (2d) 900)

*Blaine Hallock* and *James T. Donald,* both of Baker (Hallock, Donald & Banta, of Baker, on the brief), for appellant.

*O. B. Mount,* of Baker (Manley Strayer, District Attorney, of Baker, on the brief), for respondent.

CAMPBELL, J. On September 2, 1932, there was presented to and accepted by the city clerk of the city of Baker a petition purported to be signed by 680 legal voters of said city, demanding the recall of Bert L. Harvey, the mayor.

The mayor was notified on September 2, 1932, that said recall petition was presented to, and in the hands of, the city clerk. The mayor refused to resign within five days thereafter or at all. The city clerk refused to call an election and plaintiff filed the petition in the instant action asking for a writ of mandamus to compel the city clerk to call said election.

An alternative writ was issued commanding the city clerk to call a special election or show cause why he did not.

To the petition for the writ, defendant filed an answer in which he, in effect, alleges that he received the recall petition on September 2, 1932, but that he refused to file it until he made, what he considered, the necessary investigation; that one of the signers of the petition filed an affidavit with him, informing him of false statements and false representations in connec-

tion with the circulating of the petition; that, upon receipt of the recall petition, he began checking and verifying it and while so working and before he finished checking and before taking any other action in the matter he was requested in writing by 105 of said petitioners to remove their names from said recall petition.

Defendant further alleges, in substance, that he checked the names on the recall petition with the registration cards in the county clerk's office and that 95 of the signers thereon did not appear to be registered voters on September 2, 1932; that, on checking the names on the recall petition with the registration in the county clerk's office of Baker county, he was unable to identify 94 names as being the same as were registered; that upon checking the official registration cards with the poll books for the different elections held since November, 1928, he found that 171 persons who signed said recall petition had not voted at an election between the election of 1928 and November 30, 1930, in addition to the 95 who had not been registered; that he was informed, during the time he was checking the petition, that some of the verifications were improperly made and that he proceeded to make a general investigation of all things connected with the circulation and signing of the recall petition and that when he completed this investigation he was of the opinion that there were less than 498 legal voters whose names were signed to said recall petition; that, therefore, the petition was and is insufficient to justify or require the calling of an election thereon.

All the new matter set up in the answer is denied in the reply.

The cause was tried to the court who made findings in favor of plaintiff and entered a judgment ordering a peremptory writ to issue. Defendant appeals.

The pleadings present mostly questions of law.

■ ■ Defendant contends that at the time the recall petition was presented to him the preceding election for Justice of the Supreme Court was the primary nominating election of May, 1932, and the vote on which the required number of names on the recall petition should be based was the highest number of votes cast for the nomination of candidates for Justice of the Supreme Court in said election, to wit: 2177.

Within the boundary of said city of Baker, at the regular general biennial election of November, 1930, the highest number of votes cast for the office of Justice of the Supreme Court was 1991.

The recall amendment to the constitution adopted at the regular general biennial election of November, 1926, is as follows:

"Every public officer in Oregon is subject, as herein provided, to recall by the legal voters of the state or of the electoral district from which he is elected. There may be required 25 per cent, but not more, of the number of electors who voted in his district at the preceding election for justice of the supreme court to file their petition demanding his recall by the people. They shall set forth in said petition the reasons for said demand. If he shall offer his resignation it shall be accepted and take effect on the day it is offered, and the vacancy shall be filled as may be provided by law. If he shall not resign within five days after the petition is filed, a special election shall be ordered to be held within twenty days in his said electoral district to determine whether the people will recall said officer. * * *" Constitution of Oregon, Art. 2, § 18, Oregon Code 1930, p. 93.

This is verbatim with the original recall amendment adopted at the regular general biennial election held June 1, 1908.

In voting upon this amendment, electors would have in mind the elections provided by law at the time the original recall amendment was adopted. At that time, the law provided for a "regular general biennial election" and for an election known as the "primary nominating election for the purpose of choosing candidates by the political parties subject to the provisions of this law". The law (Oregon Code 1930, § 36-401) under which a primary nominating election is held defines what constitutes a political party, and excludes from voting at such primary election all persons who are not registered as a member of a political party as therein defined. Oregon Code 1930, § 36-608. In practice, this excluded all voters from voting at a primary nominating election, who were not registered either as Republican or Democrat; those being the only political parties within the legal definition in this state. In effect, it provided for a separate election for each of said parties, with the same election officers but with separate ballots and separate returns. The people, when voting on the recall amendment, could not have intended to base the number of signers for a recall petition on the vote cast at such a primary election when none but the voters of political parties were voting only for candidates of such political parties for the several offices, including that of Justice of the Supreme Court.

At present, Justices of the Supreme Court are elected on what is known as a non-partisan judiciary ballot, separate from the general ballot at both the primary nominating and regular general biennial elections. Oregon Laws, 1931, p. 607. We are of the opinion

that what was desired by the people, when the recall amendment was adopted, as a basis for the number of signatures necessary for a recall petition, was the vote cast for candidates for that office for which the largest number of voters usually expressed a choice. This, experience showed, was the vote cast for Justice of the Supreme Court at the regular general biennial election. Experience teaches that not many voters, outside of those belonging to a political party, will vote at a primary nominating election merely for the nomination of candidates for the office of Justice of the Supreme Court. At the regular general biennial election, all voters are interested in all the candidates for the several officers regardless of their political affiliations, and, therefore, a much greater number of voters participate therein.

The "preceding election for justice of the supreme court" means an election at which a Justice of the Supreme Court was elected; not one in which only candidates for that office were nominated. Thus, the required number of voters for the recall of the mayor of Baker would be 25 per cent of 1991, the number of votes cast for Justice of the Supreme Court at the regular general election in November, 1930.

■ ■ The defendant next contends that the court should have stricken from the recall petition the names of all persons who requested that their names be withdrawn.

An elector signs a recall petition with the full knowledge of its purpose, and when he has placed his signature upon such a petition he has performed an important duty of citizenship, and when that petition passes into the hands of him whose duty it is to act thereon it should no longer be subject to the whim or

weak will of the signer. The presentation of the recall petition to the city clerk placed upon that official the duty to examine it and, if necessary, check with the registration the signatures thereon. The signers should not thereafter be permitted to withdraw their names therefrom. *State ex rel. Dethles v. Fendall,* 135 Or. 145 (295 P. 191).

■■■ ■ It is argued that the city clerk has a reasonable time to investigate the petition before he is required to file the same.

The charter of the city of Baker makes no provision for the length of time in which the city clerk should complete the investigation of the petition. Neither is there any general statute applying specially to recall petitions. Initiative and referendum petitions presented to the county clerk for checking with the registration of the signers thereof are permitted to be held by the clerk "two days for the first two hundred signatures thereon and one additional day for each two hundred additional signatures or fraction thereof". Oregon Code 1930, § 36-2004. In the absence of a charter provision, we see no reason why the same rule should not be applied to the recall petition in the instant case. In the examination of recall petition, the city clerk is not a court. He should not assume to pass upon matters that do not appear on the face of the petition. He must act promptly. At the expiration of the time allowed (computed as above) for examination, he must file the petition, or, if he believes it is insufficient, notify the party by whom it was presented that he refuses to do so. In the instant case, the city clerk assumed to make an ex parte investigation and pass upon matters not appearing on the face of the petition.

"Until it has been determined that the requisite number of persons have signed * * * and the verifying affidavits have been made, no one can say that there is a recall petition at all. These matters can be determined from the papers by inspection and computation; but the one important question which could not be so determined, to wit: Whether or not the signers are qualified electors, * * *". Landrum v. Ramer, 64 Colo. 82 (172 P. 3).

Under the recall provisions of the Colorado constitution, the signers are presumed to be qualified electors unless within 15 days after the filing of the petition some one files a protest. In this state, until further statutory provision is made, it would seem to be the duty of the city clerk of Baker, when a recall petition is presented to him, to determine whether it has a sufficient number of signatures, properly verified, and that the persons signing their names thereon are qualified legal voters, and if he deems it necessary, to check the signatures with the county clerk's registration.

■ ■ It is next contended that the court erred in counting as duly registered electors the names of persons signed to the recall petition who had not voted at, at least, one election within the two years prior to November 30, 1930.

"In all elections, not otherwise provided for by this constitution, every citizen of the United States, of the age of 21 years and upwards, who shall have resided in the state during the six months immediately preceding such election, and who shall be duly registered prior to such election in the manner provided by law, shall be entitled to vote * * *". Oregon Constitution, Art. 2, § 2.

"The effect of the decision in Ladd v. Holmes [40 Or. 167, 66 P. 714, 91 Am. St. Rep. 457] was that where an election is authorized by law and is such a one as is

not elsewhere provided for by the constitution itself, as in respect to school elections, the qualifications of the voters entitled to vote thereat are defined by section 2 of article II of the constitution. * * *". Loe v. Britting, 132 Or. 572 (287 P. 74).

"In registering electors, the county clerk in each county shall use the card index system. The official registration card shall be made of stock of quality that will admit of their lasting indefinitely; * * * The cards shall be sorted in alphabetical order for each precinct, and the precinct groups shall also be arranged in alphabetical or numerical order. Said cards shall be known as the Register of Electors, and shall be public records and shall be kept in the office of the county clerk as other public records are kept". Oregon Code 1930, § 36-102.

"It shall be the duty of every elector in the state to register for any election after the first Monday in January, 1916. As long as the elector resides in the precinct in which he registeres and votes at, at least, one election held throughout the county within the biennial election period ending on the thirtieth day of November following the regular biennial general election, he shall not be required to register again. If the elector fails to vote as stated above, he shall reregister, except as otherwise provided in section 36-110. * * *". Oregon Code 1930, § 36-108.

"Commencing within thirty days after the regular biennial election in November, 1920, and biennially thereafter, the county clerk shall compare the poll books of all general and primary elections, and any other elections held throughout the county during the previous two years, with the register of electors, and if it appears that anyone is on said register who does not appear on said poll books to have voted at, at least, one such election during such period, the county clerk shall remove the said card from the register of electors. Said cards so removed shall be retained for a period of one year and may then be destroyed.

"If said elector shall appear at the office of the county clerk within said period of one year and sign a statement on the back of his registration card that he or she is still a resident and legal voter in such precinct, then said card shall be replaced in the register of electors, otherwise the county clerk shall permanently cancel said registration". Oregon Code 1930, § 36-110.

It will be observed that the law does not require the county clerk to notify the elector before cancelling his registration on account of failure to vote.

The county clerk's certificate, plaintiff's exhibit "D", shows that there were on the recall petition 566 duly registered voters' signatures and 69 signers who were not registered in any manner, and 15 signers who had registered after the petition was presented to the city clerk and that the balance of the signatures were irregular, either on the recall petition or in registration. It is admitted that six of the 69, certified as not registered, were in fact registered voters. The testimony shows that of the 566 certified as registered, the following, Palmer McKim, Elline Bucker, Mrs. A. J. Dean, Chas. Eppinger, Albert Lammert, Mrs. J. W. Daugherty, Rose Reed, Emma Nelson, Tex Osburn and V. L. Sherman were in fact not registered, thus making a total of 73 unregistered signers. To this number should be added at least 10 of the signers that the clerk's certificate and the evidence show had not registered until after the recall petition had been presented to the city clerk, making a total of 83 who were not registered in any manner at the time the recall petition was presented to the city clerk.

The record discloses that within the biennial period ending November 30, 1930, there were two elections held throughout Baker county, the county in

which the city of Baker is located, to wit: The primary nominating election of May, 1930, and the regular general biennial election of November, 1930.

The county clerk's certificate, defendant's exhibit No. 1, shows that there were 170 signers of the recall petition who were duly registered for the general biennial election of November, 1930, but who did not vote at any election held throughout the county within two years prior to November 30, 1930. From this number would be deducted those on this list whom the evidence shows voted at either the May, 1930, election or the November election of 1930, or whom the evidence shows registered after the November election of 1930 and before September 2, 1932. This would reduce the number by 42, leaving 128 of that list who were not legal voters at the time they signed the petition. This number, added to the 83 who were not registered in any manner, makes a total of 211; thus, granting all the other contentions of respondent, this reduces the number of legal voters who signed the recall petition to 489 or nine less than the required number.

It appears from the testimony that the county clerk did not remove from the registration lists, after the close of the election in 1930, the registration cards of those registered voters who had not voted during the "preceding" two years ending November 30, 1930, but simply carried them as registered. The failure of the county clerk or judges of election to discharge any of the duties imposed upon them in connection with the registration of voters would neither give to, nor take away from, any elector the right of franchise.

The recall petition was not signed by a sufficient number of legal voters to authorize the calling of an election.

Counsel, on both sides, have cited a great many authorities from other jurisdictions, but a careful reading shows that the decisions were made under different constitutional or statutory provisions and generally do not apply to the facts and circumstances of the instant case. It would serve no useful purpose to include an analysis of them in this opinion.

There are other contentions made by both appellant and respondent, but in the view we have taken herein they become immaterial and unnecessary to pass upon.

The judgment of the circuit court will be reversed and the cause remanded with instructions to dismiss. Neither party to recover costs. It is so ordered.

ROSSMAN, BEAN, and BAILEY, JJ., concur.

---

BAILEY, J. (specially concurring). At the general biennial election held in November, 1930, "the number of electors who voted" in the city of Baker, Oregon, "for justices of the supreme court" were as follows: Position No. 1, 1510; Position No. 5, 1991; and Position No. 6, 1859. There were two candidates for each of these positions, except Position No. 1, and the figures as above given constituted the total vote cast for all the candidates for each position.

In selecting the basis upon which the computation is made in determining whether or not the recall petition contained a sufficient number of signatures, Mr. Justice Campbell adopted the total number of votes cast for the two candidates for Position No. 5, to wit 1991, that being the greatest number of electors who voted for the candidates for any of the three positions.

In *Othus v. Kozer*, 119 Or. 101 (248 P. 146), this court, in computing the number of signatures necessary

to initiate a measure, took the greatest number of votes any candidate received at the general election held in November, 1924, as the basis. This construction of the section of our constitution relative to initiative measures was deemed necessary in order to make the same effective. At the time the decision in the Othus case was rendered (July, 1926), it was impossible to approximate the "whole number of votes cast for justice of the supreme court", as there were two justices to elect and the names of three candidates appeared on the ballot. The two candidates receiving the greatest number of votes were elected.

The legislature in 1929 (General Laws of Oregon, 1929, chapter 241) provided that in the future all aspirants for the Supreme Court should be candidates for some designated numbered position to be filled at the general biennial election. Under this system the greatest number of votes cast for all the candidates for any one position in the Supreme Court more nearly approximates "the number of electors who voted * * * at the preceding election for justice of the supreme court" than would result from following the method adopted in the Othus case.

With this explanation, I concur in the opinion of Mr. Justice CAMPBELL.