Argued and submitted September 24; decision of Court of Appeals reversed, judgment of circuit court affirmed December 30, 2021

Richard Taylor WHITEHEAD;
Timothy Grant; and
Citizens in Charge Foundation,
a Virginia not-for-profit corporation,
*Respondents on Review,*

*v.*

Shemia FAGAN,
Secretary of State of the State of Oregon,
*Petitioner on Review.*

(CC 16CV28212) (CA A167087) (SC S068382)

501 P3d 1027

Plaintiffs submitted an initiative petition to the Secretary of State, who excluded the signatures of voters with inactive registration. As a result, the petition did not qualify for the ballot. Plaintiffs challenged the exclusion of those signatures as unconstitutional. The trial court granted summary judgment in favor of the secretary, and the Court of Appeals reversed. *Held*: (1) To have their signature on an initiative petition counted, a voter must be presently eligible to vote; (2) requiring petition signers to have active registration by statute does not violate Article IV, section 1, of the Oregon Constitution; and (3) the secretary properly excluded the signatures of voters with inactive registration from the petition submitted by plaintiffs.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

En Banc

On review from the Court of Appeals.*

Christopher A. Perdue, Assistant Attorney General, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Chris Swift, Davis Wright Tremaine LLP, Portland, argued the cause for respondents on review. Evan R. Christopher, Portland, filed the brief for respondents on review. Also on the brief was Gregory A. Chaimov, Portland.

_____

* Appeal from Marion County Circuit Court, J. Channing Bennett, Judge. 308 Or App 268, 480 P3d 974 (2020).

Greg Wasson filed the brief on behalf of himself as *amicus curiae*. Also on the brief was Jesse A. Buss, Willamette Law Group, Oregon City.

Daniel W. Meek, Portland, filed the brief on behalf of *amici curiae* Oregon Progressive Party and Independent Party of Oregon.

BALMER, J.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

**BALMER, J.**

The question in this case is whether the Secretary of State is required to count the signatures on an initiative petition of voters whose registration is deemed "inactive." Plaintiffs are supporters of Initiative Petition 50 (2016) (IP 50) who sought to qualify that initiative for the 2016 ballot.[1] After the secretary subtracted the signatures of voters with inactive registration, the petition did not have enough signatures to be placed on the ballot. Plaintiffs brought this action challenging the secretary's exclusion of those signatures.[2]

Article IV, section 1(2)(b), of the Oregon Constitution provides that only the signatures of "qualified voters" count towards the number required to propose an initiative law. *See* Or Const, Art IV, § 1(2)(b), (c) (setting number of signatures of "qualified voters" required to propose an "initiative law" or an "initiative amendment to the Constitution"). Qualified voters must "[be] registered *** in the manner provided by law." *Id.* Art II, § 2(1)(c). The legislature has enacted statutes specifying how voters are to register and maintain their registration. ORS ch 247. Under those statutes, if a county clerk has evidence that a voter needs to update their registration or has moved to another county, the clerk notifies the voter and deems their registration "inactive" until it is updated or cancelled. ORS 247.013(6); ORS 247.563(1). Only voters with active registration may vote; voters with inactive registration must update their registration before they are again eligible to vote. ORS 247.013(7).

Plaintiffs argue that voters with inactive registration may sign initiative petitions because, even if their registration is inactive, they are still registered, and therefore remain "qualified voters" within the meaning of Article IV, section 1. The secretary responds that those voters may not sign initiative petitions because voters with inactive

---

[1] Plaintiff Whitehead is the chief petitioner for IP 50, and plaintiff Grant is an Oregon voter who signed the petition while his registration was "inactive."

[2] Under Article IV, section 1(2)(b), of the Oregon Constitution, "[a]n initiative law may be proposed only by a petition signed by a number of qualified voters equal to six percent of the total number of votes cast for all candidates for Governor at the election at which a Governor was elected for a term of four years next preceding the filing of the petition."

registration are not "registered * * * in the manner provided by law," and they therefore are not "qualified voters" within the meaning of Article IV, section 1.

We conclude, like the secretary, that because voters whose registrations are inactive are not eligible to vote, they are not "qualified voters" within the meaning of Article IV, section 1. Accordingly, we hold that their signatures on initiative petitions may not be counted, and that the secretary properly excluded them when determining the number of signatures submitted in support of IP 50.

## I.   FACTS

Plaintiff Whitehead submitted signatures in support of IP 50 to the secretary. That measure would have prohibited the release of certain voter information, including ballot status information, some of which currently may be released as part of the election verification process (for example, to allow members of the public to challenge a ballot or assist a voter in curing a flawed ballot). *See* ORS 254.415(2); ORS 254.431(3). The secretary excluded the signatures of voters with inactive registration from the total number of signatures. As a result, IP 50 lacked the required number of signatures to qualify for the ballot. A voters' registration is deemed inactive in cases where (1) the county clerk receives information suggesting that the voter needs to update their registration or has changed their address to another county, ORS 247.563, (2) the voter has not voted or updated their registration in over ten years, OAR 165-005-0180, and (3) the clerk notifies the voter that their registration is inactive, ORS 247.563(3).

Plaintiffs filed this action against the secretary under ORS 246.910 and ORS 28.010, seeking review of the secretary's decision not to count the signatures of voters with inactive registration and a declaration that Article IV, section 1, of the Oregon Constitution grants registered voters, with active and inactive registration alike, the right to have their signatures counted on initiative petitions. Both parties moved for summary judgment.

The trial court granted summary judgment to the secretary. In a letter opinion, the court emphasized the

broad authority of the legislature to enact statutes governing elections and voter registration and wrote that the "requirement that electors must be eligible to vote at the time they sign initiative petitions is long and well established." Even though voters with inactive registrations had been eligible to vote before their registration became inactive, the court concluded that, because they were not eligible to vote at the time they signed IP 50, the secretary properly excluded their signatures.

The Court of Appeals reversed in a split decision, holding that "[n]either the legislature nor the secretary is constitutionally authorized to create classes of registration that effectively disenfranchise registered voters." *Whitehead v. Clarno*, 308 Or App 268, 280, 480 P3d 974 (2020). The court began by observing that Article IV, section 1, reserves the power of the initiative to the people and that "qualified voters," a term not defined in the constitution, may sign initiative petitions. *Id.* at 272. The court then noted that, in *State ex rel Sajo v. Paulus*, 297 Or 646, 653-54, 688 P2d 367 (1984), this court explained that "qualified voters" under Article IV, section 1, must at least meet the requirements in Article II, section 2, for "qualified electors." *Whitehead*, 308 Or App at 272. Among other things, the court added, Article II, section 2, requires that qualified electors be "registered *** in the manner provided by law." *Id.*

Putting those provisions together, the Court of Appeals deduced that, for someone to have their signature counted on an initiative petition, they must be, as relevant here, "registered to vote under Oregon law." *Id.* at 273. In the Court of Appeals' view, once a voter registers, they remain registered—whether the secretary deems their registration active or inactive—until their registration is canceled. *Id.* at 280. Therefore, the court concluded, inactive voters are still registered and are entitled, under Article IV, section 1, to have their signatures on initiative petitions count. *Id.*

Judge DeHoog dissented, interpreting this court's decision in *Sajo* to establish only a necessary, but not necessarily sufficient, requirement for a person to be a "qualified voter[]" entitled to sign a petition. *Id.* at 281 (DeHoog, P.J., dissenting). In the dissent's view, requiring that voters

maintain an active registration to vote and sign initiative petitions was within the authority of the legislature to regulate elections and voter registration. *Id.*

The secretary petitioned this court for review, which we allowed.

## II.   ANALYSIS

The material facts here are undisputed, and we are presented with the legal question of whether a voter with an inactive registration may sign an initiative petition—without first updating their registration—and have their signature counted. Noting that the constitution limits the group of persons who are authorized to sign initiative petitions to "qualified voters," Or Const, Art IV, § 1, plaintiffs argue that the constitutional requirement that qualified voters be "registered," *id.* Article II, section 2, does not distinguish between active and inactive voters. In plaintiffs' view, that requirement is satisfied whether the voter's registration is active or inactive. Thus, plaintiffs argue, excluding the signature of a voter whose registration is inactive violates Article IV, section 1.

The secretary, in contrast, emphasizes that, under Article II, section 2(1)(c), a voter must be registered "in the manner provided by law." In the secretary's view, the legislative branch therefore has broad authority to define registration, and it may constitutionally exclude the signatures of voters with inactive registrations.

### A.   *Legal Background*

Whether voters with inactive registrations may sign initiative petitions depends on the meaning of "qualified voters" in Article IV, section 1, and the meaning of "registered" in Article II, section 2. Before interpreting those key provisions, we provide some background on relevant laws governing voter registration and initiatives.

The initiative power of the people of Oregon dates to 1902, when Oregon voters amended the constitution to adopt the initiative and referendum processes. Ballot Measure 1 (1902); *see* Or Const, Art IV, § 1 (1910). Article IV, section 1, allows voters to "propose laws and amendments to the

Constitution and enact or reject them at an election independently of the Legislative Assembly." Or Const, Art IV, § 1(2)(a). The initiative provision has been amended since 1902; as amended, Article IV, section 1, provides that initiative laws may be proposed by petitions signed by a certain number of "qualified voters." *Id.* § 1(2)(b). Those petitions are submitted to the Secretary of State, and the legislature is directed to "provide by law for the manner in which the Secretary of State shall determine whether a petition contains the required number of signatures of qualified voters." *Id.* § 1(4)(a). Article IV, section 1, does not define "qualified voters."

Eligibility to vote in elections is defined in Article II, section 2. Among other things, voters must be "registered not less than 20 calendar days immediately preceding any election *in the manner provided by law.*" *Id.* Art II, § 2(1)(c) (emphasis added). Thus, taking the two constitutional provisions together, to be a qualified voter eligible to sign an initiative petition, one must be "registered * * * in the manner provided by law." *Id.*

As directed by Article IV, section 1, and Article II, section 2, the legislature has enacted multiple statutes governing voter registration and initiative petitions. When a voter first registers, their registration is "active." ORS 247.013(5).[3] The county clerk designates a voter's registration as "inactive" if "(a) [t]he county clerk has received evidence that there has been a change in the information

---

[3] ORS 247.013 reads:

"(1) A qualified person shall be considered registered to vote in a county when the person's first registration in the county occurs as described in ORS 247.012.

"(2) An elector who changes residence address from the county in which the elector is registered to a different county within the state, in order to vote in an election, must be an elector registered in the county in which the new residence address of the elector is located.

"(3) If there is a change in any information required for registration under this chapter, and the elector has not changed residence address to another county, the registration of the elector may be updated as provided in this chapter.

"(4) Notwithstanding subsections (2) and (3) of this section, if an elector changes residence address from the county in which the elector is registered to a different county within the state, the elector need not register again if the registration of the elector is updated.

required for registration ***; and (b) [t]he county clerk has mailed the notice described in ORS 247.563 [notifying the voter of their inactive status and describing how to update the registration]." ORS 247.013(6). An inactive registration may be updated to become active at any time, including on election day. ORS 247.012(9). Regarding petitions, ORS 250.025(1) states that "[a]ny elector may sign an initiative or referendum petition for any measure on which the elector is entitled to vote." To be entitled to vote, a voter's registration must be active. ORS 247.013(7).[4]

## B. *Constitutional Interpretation*

With that general background in mind, we turn to the constitutional provisions that contain the wording at issue in this case—"qualified voters" in Article IV, section 1(2)(b), and "registered *** in the manner provided by law" in Article II, section 2(1)(c). This court determines the meaning of constitutional provisions by considering their text, historical context, and relevant case law. *Couey v. Atkins*, 357 Or 460, 490, 355 P3d 866 (2015).

### 1. *Article IV, section 1: the initiative power*

We begin with Article IV, section 1, which currently reads, as relevant here:

"(1) The legislative power of the state, except for the initiative and referendum powers reserved to the people,

---

"(5) If the county clerk does not have evidence of a change in any information required for registration under this chapter for an elector, the registration of the elector shall be considered active.

"(6) The registration of an elector shall be considered inactive if:

"(a) The county clerk has received evidence that there has been a change in the information required for registration under this chapter; and

"(b) The county clerk has mailed the notice described in ORS 247.563.

"(7) The inactive registration of an elector must be updated before the elector may vote in an election."

ORS 247.013 has been amended since IP 50 was submitted, Or Laws 2019, ch 675, § 1; however, because that amendment does not affect our analysis, we refer to the current version of the statute in this opinion.

[4] A voter's registration is subject to cancellation at the request of the voter, upon the voter's death, if the county clerk receives information that the voter is registered in another county or state, or if, after having been sent a notice under ORS 247.563 that their registration is inactive, the voter does not vote or update their registration within a certain time. ORS 247.555(1).

is vested in a Legislative Assembly, consisting of a Senate and a House of Representatives.

"(2)(a)  *The people reserve to themselves the initiative power*, which is to propose laws and amendments to the Constitution and enact or reject them at an election independently of the Legislative Assembly.

"(b)   An initiative law may be proposed only by a petition signed by a number of *qualified voters* equal to six percent of the total number of votes cast for all candidates for Governor at the election at which a Governor was elected for a term of four years next preceding the filing of the petition.

"* * * * *

"(4)(a)  Petitions or orders for the initiative or referendum shall be filed with the Secretary of State. *The Legislative Assembly shall provide by law for the manner in which the Secretary of State shall determine whether a petition contains the required number of signatures of qualified voters.*"

(Emphases added.)[5] The phrase "qualified voters" was adopted in 1968, and, as noted, is not defined in the constitution. Ballot Measure 2 (1968) (Primary Election). The parties agree that qualified voters are those who meet the eligibility requirements in Article II, section 2, as this court has previously explained. *Sajo*, 297 Or at 653. Plaintiffs, however, argue that voters who meet the eligibility requirement of being "registered," but who are nevertheless ineligible to vote because their registration is inactive, are constitutionally entitled to sign initiative petitions and have their signatures counted. For the reasons set out below, we disagree and instead hold that "qualified voters," for purposes of signing an initiative petition under Article IV, section 1, are those who, by virtue of meeting the requirements of Article II, section 2, are presently eligible to vote. Therefore, a voter must be presently eligible to vote to have their signature on an initiative petition counted. As explained below, that interpretation aligns with the text and historical context of Article IV, section 1.

---

[5]  Except as specifically noted below, previous amendments to both Article IV, section 1, and Article II, section 2, do not affect our analysis. We therefore refer to the current version of the constitution except where otherwise noted.

"Qualified," as used here, means "having complied with the specific requirements or precedent conditions (as for an office or employment) : ELIGIBLE, CERTIFIED," or "fitted (as by endowments or accomplishments) for a given purpose : COMPETENT, FIT." *Webster's Third New Int'l Dictionary* 1858 (unabridged ed 1961). Our initial understanding, then, is that "qualified voters" are those who have "complied with the specific requirements or precedent conditions" for voting, or who are, in other words, "eligible" to vote. *Id.*[6]

To confirm that understanding, we look to the provision's context, which includes preexisting constitutional provisions, case law, and the statutory framework against which the law was enacted. *See State v. Pipkin*, 354 Or 513, 526, 316 P3d 255 (2013). When the initiative power was added to the constitution in 1902, initiative petitions required the signatures of a certain portion of the "legal voters" of the state. Or Const, Art IV, § 1 (1910). At that time, there was no constitutional voter registration requirement (there was a statutory registration requirement). Instead, the constitution restricted voting to white males, 21 years of age or older, who lived in Oregon, and who either were or intended to become American citizens. *Id.* Art II, § 2 (1910).[7] Thus, the restriction on who could sign an initiative petition was not related to registration, but rather to whether the person signing was eligible to vote, and that eligibility was defined by Article II, section 2.

The current term "qualified voters" was substituted for "legal voters" in 1968 by a constitutional amendment that repealed and replaced the existing Article IV, section 1. Ballot Measure 2 (1968) (Primary Election). There is no indication that the change in wording from "legal" to "qualified" was significant. According to the explanation of that 1968 measure, drafted by committee pursuant to *former* ORS 254.210 (1968), *renumbered as* ORS 251.205 (1979),

---

[6] We cite the 1961 edition of *Webster's* because the term "qualified" was added to the constitution in 1968. Ballot Measure 2 (1968) (Primary Election). The applicable definitions in the most recent (2002) edition of *Webster's* are identical.

[7] Of course, the Civil War amendments to the United States Constitution prevented Oregon from enforcing its restrictions against voting by nonwhite citizens, *Wood v. Fitzgerald*, 3 Or 568, 580 (1870), although racial restrictions on voting remained in the Oregon Constitution until 1927.

and included in the voters' pamphlet, the stated purpose of the measure was to "change the basis for determining the number of signatures required for initiative and referendum petitions," to provide additional time to certify signatures, and to "repeal several obsolete sections * * * and remove archaic and redundant language." Official Voters' Pamphlet, Primary Election, May 28, 1968, 8. The explanation emphasized that the "repealed sections [were] purely 'clean-up' of the wording and in no way do they diminish the power of the people to initiate or refer measures." *Id.* That context suggests that the substitution of "qualified voters" did not alter the meaning of Article IV, section 1. The historical context of Article IV, section 1, therefore suggests that the power to sign initiative petitions is reserved to eligible voters.

We turn next to relevant case law interpreting Article IV, section 1. The key case is *Sajo. Sajo* was an original mandamus proceeding in this court in which the petitioners argued that the secretary and county clerks had improperly disqualified signatures from an initiative petition. 297 Or at 648. The petitioners identified six categories of signatures that, they alleged, had been wrongly disqualified or otherwise improperly treated. *Id.* at 656. One category of signatures that the court considered in *Sajo* is relevant here: signatures of persons who were not registered at the time of signing, but who had registered before the petition was filed. This court wrote:

"Article IV, section 1(2)(b) refers to 'qualified voters,' which certainly makes eligibility under article II, section 2 a necessary condition for validly signing a petition. But this eligibility to vote on election day may not necessarily be a sufficient condition for signing a petition, because article IV, section 1(4)(a) clearly contemplates that eligibility as a 'qualified voter' can be verified before the petition is filed."

297 Or at 654. Along with a statute setting out the qualifications of petition signers, the court reasoned, those constitutional provisions "contemplate that petition signers will be qualified voters at the time they sign the petition." *Id.* at 660. Therefore, we concluded, the secretary properly excluded the signatures of those voters, emphasizing that

"eligibility to vote is a requirement that must exist at the time a voter signs a petition." *Id*.

Thus, both the current text of Article IV, section 1, and the historical context of that section and its amendments reinforce our understanding, expressed in *Sajo*, that, to be a "qualified voter[]" and have one's signature on an initiative petition count, the voter must at least be eligible to vote.

    2.  *Article II, section 2: qualifications of voters*

To understand what eligibility to vote entails, we turn to Article II, section 2, which we interpret by the same methodology applied to Article IV, section 1, above.

First, the text. Article II, section 2, as relevant here, currently reads:

> "(1)  Every citizen of the United States is entitled to vote in all elections not otherwise provided for by this Constitution if such citizen:
>
> "(a)  Is 18 years of age or older;
>
> "(b)  Has resided in this state during the six months immediately preceding the election [(with an exception for presidential elections)] * * *; and
>
> "(c)  *Is registered* not less than 20 calendar days immediately preceding any election *in the manner provided by law*."

Or Const, Art II, § 2(1) (emphases added). The key phrases are "is registered" and "in the manner provided by law." Plaintiffs argue that "whether a voter is 'registered' is the essential attribute of a 'qualified voter[]' and not whether the voter is able to vote without taking any additional steps." Thus, in plaintiffs' view, any voter who has once registered and whose registration has not been cancelled is a "qualified voter[]," even if, under applicable Oregon law, they may not vote. The secretary, on the other hand, argues, based on the emphasized text above, that the legislature is authorized to define "registration" and create registration maintenance requirements. In the secretary's view, if the legislature has enacted laws barring voters with inactive registration from voting, then those voters are not "registered * * * in the

manner provided by law" as the constitution requires, and they are not eligible to vote. Because those once-registered voters are not eligible to vote, the secretary concludes, they may not sign initiative petitions.

"Register," as used in 1927 when the registration requirement was adopted into Article II, section 2, generally meant "[t]o enroll one's name in a register." *Webster's* 1796 (1921). That definition by itself, however, does not resolve the meaning of the word "register" here, because simply *enrolling* one's name in a register of some kind—even a register related to voting—does not necessarily qualify one to vote. The constitution itself does not state what more, if anything, is required for a "registered" voter to be able to vote. Instead, the constitution expressly delegates that task to the legislature through the phrase "in the manner provided by law." Or Const, Art II, § 2(1)(c). "Manner," as used here, means "[a] way of acting ; a mode of procedure ; the mode or methods in which something is done or in which anything happens ; way ; mode." *Webster's* at 1313 (1921). The phrase "provided by law" as used in the constitution means, as previously explained by this court, "'provided by enactment of the legislative branch of the state.'" *State v. Sagdal*, 356 Or 639, 650, 343 P3d 226 (2015) (quoting *Jory v. Martin*, 153 Or 278, 314, 56 P2d 1093 (1936) (Kelly, J., dissenting)). Thus, "registered *** in the manner provided by law" means enrolled in a register of voters through the procedures enacted by the legislative branch.

The choice of the phrase "[i]s registered" is also meaningful here. Or Const, Art II, § 2(1)(c) (emphasis added). That phrase, added to the constitution in 1960, Ballot Measure 7 (1960), and its previous version, "*shall be duly registered*," Or Const, Art II, § 2 (1930) (emphasis added), both describe a status that a voter must have at a certain time: "be" and its present tense form "is," as used here, mean "[t]o hold or obtain as true with respect to some condition, thing, or quality ; to have or enter into a real relation with a specified object or idea." *Webster's* at 195 (1921). Thus, being "registered," as contemplated by Article II, section 2, is a "condition" or "quality" that a voter must presently have to be eligible to vote. It is not, by contrast, a discrete act that a voter performs. Were this provision meant to refer to the

discrete act of "registering," as opposed to the condition or status of "being registered," the drafters likely would have used the phrase "shall have registered" or "has registered." The drafters did not do so here.

In sum, the text shows that Article II, section 2, requires that voters, at the time they vote, be currently enrolled in a register of voters who are eligible to vote according to the procedure established by the legislative branch. That text suggests that the legislature may regulate voter registration as it sees fit, consistent with constitutional requirements. As this court has stated before, if the drafters of a constitutional provision intended to limit the legislature, "they would have said so in plain and unmistakable language and not have left the matter in doubt." *Jory*, 153 Or at 284.

Next, the historical context. The constitutional registration requirement was adopted by Oregon voters in 1927. Ballot Measure 5 (1927) (Special Election). Before that, registration was required by statute. Oregon Laws, title XXVIII, ch XI (1920). As originally adopted, the constitutional registration requirement expressly "ratified, adopted and confirmed" the previously existing registration laws "as if enacted after the adoption of this amendment." Or Const, Art II, § 2 (1930). Those previously existing laws included a registration-verification law, which directed county clerks before an election to confirm that registered voters had voted at least once in the last two years. Oregon Laws, title XXVIII, ch XI, § 4065 (1920). If a voter had not voted in the last two years, the clerk was to remove their registration card from the register. *Id.* That registration card would be retained for a year, during which the voter could go to the county clerk's office and sign a statement on the card attesting that they were still a legal voter and have the card replaced in the register. *Id.* If the voter did not appear within that year, the registration was to be "permanently cancel[led]" and the card "destroyed." *Id.*

That registration-verification law resembles in some ways the active/inactive system in effect today. Although the laws use different terminology and somewhat different procedures, both laws essentially provide for a system by which

the county clerk may, in particular circumstances, tempo-
rarily disallow a person from voting without permanently
cancelling their voter registration. In the earlier law, a vot-
er's registration card was "remove[d] *** from the register"
until the voter confirmed or updated their registration. *Id.*
Their registration card was retained during that time, but
they could not vote. *Id.* Similarly, under current law, a voter's
registration is designated "inactive" until they update their
registration. ORS 247.013(7). They are not unregistered, nor
has their registration been fully canceled, but they may not
vote. *Id.* When the constitutional registration requirement
was adopted in 1927, the voters at the same time expressly
approved the existing registration system, which operated
much like the active/inactive system now in place.

     Those systems are not identical, but, as we have
noted before, this court's purpose in interpreting the consti-
tution "is not to freeze the meaning of the state constitution
to the time of its adoption, but is instead 'to identify, in light
of the meaning understood by the framers, relevant under-
lying principles that may inform our application of the con-
stitutional text to modern circumstances.'" *Couey*, 357 Or at
490 (quoting *State v. Davis*, 350 Or 440, 446, 256 P3d 1075
(2011)). The historical context of the 1927 constitutional reg-
istration requirement—that it was intended to be consistent
with the then-existing registration-verification statute—
supports the conclusion that the present statutory scheme
of "active" and "inactive" registration is consistent with
the current constitutional registration requirement. It also
reinforces the legislature's authority to regulate voter reg-
istration, including to create a system that allows a county
clerk to temporarily place a person in an "inactive" status
and not permit them to vote in circumstances established by
statute.

     We next turn to the relevant case law, which sup-
ports the authority of the legislature to define "regist[ra-
tion]." In *State ex rel. v. Clark*, 143 Or 482, 22 P2d 900, *reh'g
den* (1933), voters in Baker City petitioned to recall their
mayor. *Id.* at 483. After their petition was filed, the local
clerk delayed calling the election to investigate whether the
signatures on the petition were valid. *Id.* at 483-84. Several
signatures on the petition, it turned out, were of voters

who had registered but had not voted in the last two years, *id.* at 484, and so they were ineligible to vote under the registration-verification law discussed above, recodified at Oregon Code, title XXXVI, ch I, § 36-110 (1930). This court, after considering the text of Article II, section 2, which at that time required voters to "be duly registered * * * in the manner provided by law," Or Const, Art II, § 2 (1930), concluded that the clerk had correctly excluded the signatures of those who had not maintained their registration. *Clark*, 143 Or at 492. Thus, this court did not consider the registration-verification requirement to be at odds with Article II, section 2, and implicitly upheld the legislature's authority to regulate voter registration. That decision further suggests that the phrase "[i]s registered" in Article II, section 2, refers to being presently compliant with voter registration statutes, and not to having "enroll[ed] one's name in a register" once. *Webster's* at 1796 (1921). Other cases upholding statutes that regulate voting eligibility include *Sajo*, 297 Or at 654 ("Article II, section 2 neither requires nor defines registration of otherwise qualified voters; it leaves this to be provided by law. * * * And article IV, section 1(4)(b) authorizes the submission of initiative and referendum measures to be regulated by laws consistent with this contemplated verification [of voter eligibility]."), *Ivie v. City of Oceanlake*, 208 Or 417, 427-28, 302 P2d 221 (1956) (upholding requirement that voters be registered at least 30 days before a special election), and *Wright v. Blue Mt. Hospital Dist.*, 214 Or 141, 149, 328 P2d 314 (1958) (upholding a residency requirement and stating, "even though the constitution prescribes the qualification of a voter, there is a wide field for legislative action in determining how such qualifications shall be ascertained and in prescribing regulations for the prevention of fraud and abuses").

Finally, we note that, even if the text, historical context, and relevant case law did not unambiguously show that the active registration requirement was within the constitutional authority of the legislature, it is a longstanding principle that, when the constitution does not expressly limit the legislature's authority, there is a strong presumption that the legislature's actions are constitutionally permitted. *Jory*, 153 Or at 285 ("Plenary power in the Legislature, for

all purposes of civil government, is the rule, and a prohibition to exercise a particular power is an exception."). Here, were there any doubt based on the text that the active registration requirement was within the constitutional authority of the legislature, "we should be compelled to dissolve that doubt in favor of the constitutionality of the mode which the legislature had adopted." *Cline & Newsome v. Greenwood & Smith*, 10 Or 230, 241, 1882 WL 1434 (1882).

To summarize, when the initiative power was first added to the constitution, there was no registration requirement, only a requirement that signers be "legal voters"—the equivalent of "qualified voters" in the present constitutional provision—meaning someone eligible to vote. Oregon voters later added a constitutional registration requirement to be eligible to vote, and in doing so ratified the previously existing statutory registration-verification requirement. At no point did the constitution purport to define or delimit "registration" or set up a strict dichotomy of "registered" and "not registered" for purposes of Article IV, section 1, as plaintiffs suggest. Instead, defining and regulating voter registration and verification of registrations has been within the purview of the legislative branch. And this court has issued several decisions squarely holding that voters may sign initiative petitions only if they could legally vote in an election at the time of signing. We conclude that voters with inactive registration, who statutorily may not vote, may not have their signatures counted on initiative petitions either.[8]

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

---

[8] We note that a voter may easily determine whether their registration is inactive, including by visiting the secretary's website. Elections Division, Oregon Secretary of State, *My Vote*, https://sos.oregon.gov/voting/pages/myvote.aspx (accessed Dec 23, 2021). Making a voter's registration active again requires only updating the registration, which can be done online if the voter has an Oregon DMV number, through the state Department of Transportation, or by signing and mailing or delivering a paper form to the local county elections office. ORS 247.012(1).